In re DETTLER FARMS, Debtor.

DETTLER FARMS, Plaintiff,

v.

CLARK COMMUNITY OIL COMPANY, together with all of its agents and employees and Greg Overby, its manager, Defendants.

Bankruptcy No. 184–00171.
Adv. No. 185–0018.

United States Bankruptcy Court,
D. South Dakota.

March 5, 1986.

J. Bruce Blake, Sioux Falls, S.D., for debtor/plaintiff Dettler Farms.

Frederic R. Moulton, Clark, S.D., for defendants Clark Community Oil Company, together with all of its agents and employees and Greg Overby, its manager.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### Introduction

This matter is before the Court on a complaint for permanent injunction against Clark Community Oil Company, together with all of its agents, employees, and Greg Overby, its manager ("Defendants"), filed on behalf of Dettler Farms ("Debtor") by Attorney J. Bruce Blake, Sioux Falls, South Dakota, on May 10, 1985. The relief requested is a permanent injunction against the defendants from any further participation in the criminal prosecution of the debtor, its general partners, or any of its employees. Attorney Frederic R. Moulton, Clark, South Dakota, represented the defendants. A hearing was held in Aberdeen, South Dakota, on May 17, 1985.

### Background

Dettler Farms is a South Dakota farm partnership comprised of two general partners, Kevin and Steven Dettler.

On November 1, 1984, the debtor issued a check in the amount of $11,025.92 to Clark Community Oil Company ("CCOC") for receipt of a certain amount of fuel needed in its farming operations. In due course, CCOC deposited the debtor's check into its account at First Bank, Clark, South Dakota, and the check was subsequently

returned because of insufficient funds (NSF).[1]

On December 4, 1984, an involuntary Chapter 11 was filed against the debtor. Thereafter, the debtor filed a voluntary Chapter 11 conversion petition on February 6, 1985.

On March 18, 1985, a criminal complaint was filed and warrant issued for the arrest of Kevin Dettler, one of the debtor's partners. Kevin Dettler was charged under S.D.C.L. § 22-41-1 [2] with the crime of passing a check against insufficient funds in the first degree.

On May 10, 1985, the debtor filed a complaint for permanent injunction against CCOC, including its agents and employees. The relief requested is a permanent injunction from further participation in the criminal prosecution of the debtor, its general partners, or any of its employees.

1. CCOC is listed in Debtor's A-3 schedule as having an unsecured claim in the amount of $17,800. The debtor's unsecured debts are estimated at $344,593. at the time of filing.

2. S.D.C.L. § 22-41-1 provides:
   *Passing check against insufficient funds—Degrees according to amount.* Any person who, for himself or as agent or representative of another, for a present consideration with intent to defraud, passes a check drawn on a financial institution knowing at the time of such passing that there are not sufficient funds in the account on which the check was drawn in the financial institution for the payment of such check and all other checks upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is guilty of passing a check against insufficient funds. A person who passes a check of one hundred dollars or less against insufficient funds is guilty of passing a check against insufficient funds in the third degree, which is a Class 2 misdemeanor. A person who passes a check or a series of checks within any thirty-day period in the amount of two hundred dollars or less but more than one hundred dollars, against insufficient funds, is guilty of passing a check against insufficient funds in the second degree, which is a Class 1 misdemeanor. A person who passes a check of more than two hundred dollars, or a series of checks within any thirty-day period totaling more than two hundred dollars, against insufficient funds is guilty of passing a check against

On May 17, 1985, a hearing was held. Following the hearing, the Court decided that a preliminary injunction should issue and a written preliminary injunction was entered on June 12, 1985.

At the May 17, 1985, hearing, Mr. Greg Overby, Manager of CCOC, testified to the following:
1. His managerial duties included the collection of checks taken by CCOC but subsequently returned NSF.
2. The debtor's NSF check came to his attention.[3]
3. Upon receipt of the debtor's check, he took the check to Debtor's bank in Redfield, South Dakota, and told the bank to hold it for collection. Eventually, he picked up the check because it was not paid.
4. Thereafter, he took the check to Jon Flemmer, State's Attorney, Clark County, South Dakota, for collection purposes.[4]

insufficient funds in the first degree, which is a Class 6 felony.

3. Mr. Overby estimated that he received the check seven to nine days after CCOC initially received the check.

4. During cross-examination, Attorney Blake and Mr. Overby had the following exchange:
   MR. BLAKE: So but in any event, once the check was returned to you, you took the check to the State's Attorney?
   MR. OVERBY: Yes, I did.
   MR. BLAKE: And that was in Clark County?
   MR. OVERBY: Right.
   MR. BLAKE: And that gentleman is who, who is the State's Attorney?
   MR. OVERBY: John (sic) Flemmer.
   MR. BLAKE: And you gave John (sic) Flemmer the check?
   MR. OVERBY: Right.
   MR. BLAKE: And what did you do in addition to giving him the check, if anything? Did you tell him anything or what took place?
   MR. OVERBY: Well, I just told him I wanted the check collected. I didn't seem to be able to get the check collected under the process I was using.
   MR. BLAKE: So you took the check to John (sic) Flemmer to be collected, you instructed him; is that correct?
   MR. OVERBY: Right.
   In responding to Attorney Moulton's inquiry as to whether states' attorneys' duties include collecting on NSF checks, Mr. Overby stated:

5. That a few days prior to signing the criminal complaint, he contacted one of the partner's wives, informing her of his meeting with the State's Attorney and threatening to sign a complaint against her husband if the NSF check was not promptly paid.[5]

6. That because the check was not paid, he signed a criminal complaint against Kevin Dettler.

### Issue

The principal issue raised is: When a creditor is seeking to utilize the criminal process as a means of exacting a preference not accorded to other creditors similarly situated, may a bankruptcy court permanently enjoin that creditor from any further participation in the criminal prosecution of the debtor?

### Law

Prior to determining this issue, the Court notes that both the debtor and CCOC, through their respective attorneys, addressed only the general issue of whether a bankruptcy court may permanently enjoin a post-petition bad check state criminal proceeding. The Court, however, will not address this issue. This is because the Clark County State's Attorney is not a party in this matter. Named defendants include only CCOC, together with all of its agents, employees, and Greg Overby, its manager.

■ As to the principal issue, the Court holds that a creditor (including agents or employees) may be permanently enjoined from any further participation in the criminal prosecution of a debtor when a creditor is seeking to utilize the criminal process as a means of exacting a preference not accorded to other creditors similarly situated. This is based on the following discussion.

While many courts have addressed the issue of whether a bankruptcy court may permanently enjoin a state bad check criminal proceeding,[6] apparently only one court has addressed the question of when a creditor may be enjoined from any further participation in the criminal prosecution. *See In re Caldwell,* 5 B.R. 740 (Bkrtcy.W.D.Va. 1980).

When faced with this issue in *Caldwell,* the Western District of Virginia Bankruptcy Court held that a creditor may be permanently enjoined from any further partic-

---

"Well, I felt that I was issued this check and it was insufficient funds and it was part of his job to help me obtain the funds."

**5.** During cross-examination, Attorney Blake and Mr. Overby had the following exchange:

MR. BLAKE: Okay. But I am talking now about what you told Mrs. Dettler a day or two or three before the criminal complaint was signed on March 18, 1985. I am asking you to recall what you told her at that time.
MR. OVERBY: All I told her is that complaint—I know I told her the complaint be signed because he hadn't come in and taken care of the check.
MR. BLAKE: And then she called you back, did she not, the next day so that you or Kevin called you back so you know that he had received the message.
MR. OVERBY: Okay.
MR. BLAKE: You first called Mrs. Dettler, as I understand it, two or three days before the complaint was signed; we agree on that, do we not?
MR. OVERBY: She was called before the complaint was signed.
MR. BLAKE: Yes.
MR. OVERBY: Time-wise I don't recall the exact date.

MR. BLAKE: And she was told, was she not, that the papers were typed and you had held off signing them to see if Kevin would pay you?
MR. OVERBY: Yes.
MR. BLAKE: And she was told that if you didn't get paid by Kevin by a certain date, you were going to sign the complaint?
MR. OVERBY: I think she told me that he was out of the area and wouldn't be back and I said well, by Friday or whatever the date, I was going to sign the complaint.
MR. BLAKE: If you hadn't been paid by that time?
MR. OVERBY: Right.

**6.** For a detailed discussion of this issue, *see* Hendel & Reinhardt, *Inhibiting Post-Petition "Bad Check" Criminal Proceedings Against Debtors: The Need for Flexing More Judicial Muscle,* Com.L.J. 236 (May 1984); Kratch & Young, *Criminal Prosecutions and Manipulative Restitution: The Use of State Criminal Courts for Contravention of Debtor Relief,* Ann.Surv.Bankr.L. 107 (1984); Comment, *Preemption's Effect on Younger v. Harris Abstention: May a Bankruptcy Court Enjoin a State Criminal Prosecution?,* 35 Mercer L.Rev. 1345 (1984).

ipation in the criminal prosecution of a debtor when "a creditor is seeking to utilize the criminal process as a means of extracting a preference not accorded other creditors similarly situated." 5 B.R. at 742. In reaching this conclusion, the court both reconciled the apparent conflict between Bankruptcy Code Subsections 362(a)(6) and (b)(1) [7] and noted the United States Supreme Court's holding in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). 5 B.R. at 741.

With respect to the United States Supreme Court's holding in *Pepper v. Litton*, the court observed:

> The principles set forth in *Pepper* requires (sic) this Court to prohibit one creditor from receiving preferential treatment ahead of other creditors in the same class. In the case at bar, [the creditor], being a general unsecured creditor, must be accorded the same treatment in the allowance and payment upon its claim as other general unsecured creditors receive.

*Id.*

Based on the foregoing, the Court adopts the *Caldwell* court's test and underlying

rationale as determinative of when a creditor may be permanently enjoined from any further participation in state bad check criminal proceedings.[8]

■ The issue, therefore, becomes whether CCOC, through its manager, Mr. Overby, was seeking to utilize the criminal process as a means of extracting a preference not accorded to other creditors similarly situated. The Court holds in the affirmative.

In the instant case, Mr. Overby testified that collecting on the NSF check was the reason that he contacted and met with the Clark County State's Attorney. Moreover, he contacted one of the general partner's wives and threatened to sign a criminal complaint if CCOC was not promptly paid.[9] Put more aptly, he offered not to sign the criminal complaint if the NSF check was paid.

According to the debtor's schedules, CCOC has an unsecured claim in the amount of $17,800. Allowing an unsecured creditor to post-petition collect its entire debt by threatening criminal prosecution

---

**7.** The *Caldwell* court noted at the outset that Bankruptcy Code provisions 362(a) and 362(b)(1) may appear conflicting. Under Section 362(a)(6), a creditor is stayed from "any act to collect ... or recover a claim against the debtor that arose before the commencement of the case under this title." But under Subsection (b)(1), the "commencement or continuation of a criminal action or proceeding against the debtor" is excepted from the automatic stay provisions. In reconciling the apparent conflict, the court reasoned that a creditor's actions are only excepted from the stay provision under Subsection (b)(1) "if a creditor's actions are nothing more than aiding and assisting the prosecuting authorities in their rightful duties in protecting society by punishment for criminal laws...." This is because any other reading would allow form to control over substance. 5 B.R. at 741. This Court notes the *Caldwell* reasoning is consistent with Section 362(a)'s legislative history. The legislative history, in pertinent part, reads as follows:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.... It stops all collection efforts, ... It permits the debtor to attempt a repayment or reorganization plan, ... The automatic

stay also provides creditor protection. *Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of [their] claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.* (emphasis added)
H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6296–6297; S.Rep. No. 989, 95th Cong., 2nd Sess. 49 & 54–55 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5835 & 5840–5841.

**8.** A bankruptcy court has injunctive powers under 11 U.S.C. § 105. Section 105(a) provides:
> "The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

**9.** According to the record, this contact was made at least two weeks after the debtor filed its voluntary Chapter 11 petition for relief. The criminal complaint was not issued until March 18, 1985—more than two months after the filing.

would undoubtedly allow it to be treated differently from other unsecured creditors. *See, e.g.,* 11 U.S.C. § 1129(a) (requirements necessary for Chapter 11 plan confirmation).

Based on the foregoing, the Court finds that CCOC, through its manager, Mr. Overby, was seeking to utilize the criminal process as a means of extracting a preference not accorded to other creditors similarly situated and that this type of creditor action violates both the Bankruptcy Code and principles as provided in *Pepper v. Litton,* 308 U.S. at 295, 60 S.Ct. at 240; therefore, the Court holds that Clark Community Oil Company, together with all of its agents, employees, and Greg Overby, its manager (Defendants), are permanently enjoined from any further participation in the criminal prosecution of the debtor, its general partners, or any of its employees.

Accordingly, this Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and F.R.Civ.P. 52. Counsel for the debtor is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.