**In re BICRO CORPORATION, Debtor.**

**BICRO CORPORATION and David Fidler, President and Richard Knovich, Vice President, Plaintiffs,**

v.

**Steve MACKES, Mackes Electric, Defendant.**

Bankruptcy No. 5–87–00446.
Adv. No. 5–87–0165.

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 13, 1988.

John H. Doran, Wilkes–Barre, Pa., for plaintiffs.

Franklin E. Kepner, Berwick, Pa., for defendant.

## MEMORANDUM

THOMAS C. GIBBONS, Bankruptcy Judge:

Plaintiffs (BICRO, et al.) commenced this proceeding seeking to enjoin Defendant (Mackes) from proceeding with criminal prosecution of the debtor, its officers and/or employees in Magistrate's Court in the County of Columbia, Commonwealth of Pennsylvania.

Plaintiff Bicro is a Chapter 11 debtor charged with passing a check against insufficient funds. Plaintiffs, David Fidler and Richard Knovich, are respectively, the President and Vice President of the corporation.

A hearing was conducted on October 14, 1987 on a motion entitled "Application for Temporary Restraining Order" from which we make the following findings of fact.

1. Bicro conceived and operated what has become known as the Berwick Fair.

2. During the Fair, services and/or materials were supplied by Steve Mackes a/k/a Mackes Electric.

3. Defendant was presented with a check as payment for the services and/or materials provided to Plaintiff, Bicro.

4. The check dated June 22, 1987, issued to the Defendant in the amount of Five Thousand Four Hundred Ninety–Three and 54/100 ($5,493.54) Dollars for services and material, was not honored by the institution on which it was drawn due to insufficient funds in the Bicro account.

5. Plaintiff Bicro filed a petition under Chapter 11 of the Code on July 7, 1987.

Documents filed on behalf of the defendant Mackes for inclusion into the record following the hearing conducted on October 14, 1987, set forth the following facts:

1. The District Attorney for the County of Columbia by affidavit states that he was contacted in the latter part of August 1987 by Defendant's attorney concerning the institution of criminal proceedings against the plaintiffs, Fidler and Knovich.

2. Defendant's attorney first advised the Plaintiffs, Fidler and Knovich, on July 3, 1987 of the possibility of criminal pro-

ceedings if restitution was not made to the Defendant Mackes and that such action would be commenced pursuant to the provisions of 18 Pa.C.S.A. § 4105.

Pa.C.S.A. 18 § 4105 provides:

(a) an offense defined—A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

(b) presumption—For the purposes of this section as well as in the prosecution for the theft committed by means of a bad check, an issuer is presumed to know that the check or order (other than a post-dated or order) would not be paid, if:

(1) the issuer had no account with the drawee at the time the check or order was issued or;

(2) payment was refused by the drawee for lack of funds, upon presentation within thirty (30) days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

(c) grading—An offense under this section is a misdemeanor of the second degree if the amount of the check or order exceeds $500 or if it is a third or subsequent offense within a five years period; otherwise it is a summary offense.

(d) venue—(omitted by the court).

(e) cost—Upon conviction under this section the sentence shall include an order for the issuer or passer to reimburse the payee or such other party as the circumstance may indicate for:

(1) the face amount of the check;

(2) interest at the legal rate on the face amount of the check from the date of dishonor by the drawee;

(3) a service charge not to exceed $20 if written notice of the service charge was conspicuously displayed on the payee's premises when the check was issued.

## DISCUSSION

In addressing this proceeding, we are asked to permanently enjoin the defendant from continuing criminal charges which he brought against plaintiffs pursuant to 18 Pa.C.S.A. § 4105. To do so, we must review § 362(a)(6), (b)(1) and § 105 of the Bankruptcy Code, which provide as follows:

**§ 362. Automatic Stay.**

(a) Except as provided in subsection (b) of this section, a petition filed under § 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of-

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

\*　　\*　　\*　　\*　　\*　　\*

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), does not operate as a stay-

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

\*　　\*　　\*　　\*　　\*　　\*

**§ 105. Power of the court.**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

As stated above, 11 U.S.C. § 362 provides for the automatic stay of actions involving a debtor whose petition has been filed in this Court and specifically excludes criminal proceedings. Congress by enacting § 362(b)(1) of the Bankruptcy Code sought to make it clear that the commencement or continuation of a criminal proceeding against a debtor was excepted from the operation of the automatic stay. *Pellegri-*

*no v. Division of Criminal Justice* (In re Pellegrino), 42 B.R. 129 (Bankr.D.Conn. 1984). As the legislative history of the Code at § 362(b)(1) provides: "The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension. Thus, criminal actions and proceedings may proceed in spite of a bankruptcy." House Report No. 595, 95th Congress, 1st Session, 342, reprinted in 1978 U.S.Code Cong. and A.D. News 5787, 5963, 6299.

■ As to the ability to issue a permanent injunction in this matter, the Court holds that a creditor (including agents and employees) may be permanently enjoined from any further participation in a criminal prosecution of a debtor when a creditor is seeking to utilize the criminal process as a means of exacting a preference not accorded to other creditors similarly situated.

It is well established that the bankruptcy court will not permit criminal prosecutions to be used for the sole purpose of collecting a debt. *In re Jerkzak*, 47 B.R. 771 (Bankr. W.D.Wis.1985); *Padgett v. Latham* (In re Padgett), 37 B.R. 280 (Bankr.W.D.Ky. 1983). This principle is now supported by 28 U.S.C. § 1334. Section 1334 vests jurisdiction in the Bankruptcy Court, which is exercisable over all matters affecting a case under 11 U.S.C. § 101, et seq.

As our present proceeding is similar to the situation of *In re Dettler Farms*, 58 B.R. 404 (Bankr.D.S.D.1986), this Court will adopt the reasoning of that case. "Prior to determining this issue, the court notes that both the debtor and COCC, through their respective attorneys, addressed only the general issue of whether a bankruptcy court may permanently enjoin a post-petition bad check state criminal proceeding. The Court will not address this issue. This is because the Clark County State's Attorney is not a party in this matter. Named defendants only include CCOC, together with its agents, employees, and Creg Overby, its manager." *In re Dettler Farms, supra,* at 406.

Such are the facts in this proceeding. The District Attorney of Columbia County is not a party to these proceedings and, therefore, we will similarly not reach this question.

Research indicates that a number of courts have discussed the issue of whether a bankruptcy court may permanently enjoin a state bad check criminal proceeding, but only two courts have addressed the question of when a creditor may be enjoined from any further participation in criminal prosecution. See *In re Caldwell,* 5 B.R. 740 (Bankr.W.D.Va.1980), which has been cited by some sixty-one writers and the latest being *In re Dettler Farms, supra.*

When confronted with the issue present in this matter, the Court in *In re Dettler Farms, supra,* adopted the reasoning of *In re Caldwell.* We find no reason to depart from the reasoning advanced in *Caldwell* in this instance. The Court in *Caldwell* held that a creditor may be permanently enjoined from any further participation in the criminal prosecution of a debtor when "a creditor is seeking to utilize the criminal process as a means of extracting a preference not accorded other creditors similarly situated." 5 B.R. at 742. In reaching this conclusion, the court both reconciled the apparent conflict between the Bankruptcy Code Subsections 362(a)(6) and (b)(1) and noted the United States Supreme Court's holding in *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). 5 B.R. at 7541.

With respect to the United States Supreme Court's holding in *Pepper v. Litton,* the Court advances the following which is an underlying principle of the Code:

"The principles set forth in *Pepper* requires (sic) this Court to prohibit one creditor from receiving preferential treatment ahead of other creditors in the same class. In the case at bar, (the creditor), being a general unsecured creditor, must be accorded the same treatment in the allowance and payment upon its claim as other general creditors receive." *Id.*

For the reasons cited above, the Courts finds no reason to depart from the tests of *Dettler Farms* and *Caldwell* as determina-

tive of when a creditor may be permanently enjoined from any further participation in state bad check criminal proceedings.

Thus, in the instant case the issue becomes whether Steve Mackes, a/k/a Mackes Electric was seeking to utilize the criminal process as a means of extracting a preference not accorded to other creditors similarly situated. The Court holds in the affirmative.

In the matter before the Court, Mr. Mackes' testimony, as well as the testimony of other witnesses called at the evidentiary hearing, must be given weight as to the motive of Mr. Mackes for the institution of the state criminal bad check proceedings.

Testimony from the plaintiffs as well as the defendant in this action indicated that the defendant had a more than average concern over the possibility that he would not be paid for his services. The defendant sought and received from plaintiff, Bicro, a modification of his contract for services and material to receive payments on a per diem basis. Defendant, along with other parties not identified in the testimony, also became concerned with the control over the proceeds generated from tickets sales at a major event of the fair and injected themselves into the accounting process. Defendant's role appeared to be that of monitor to insure that funds were not diverted, which might be utilized by the plaintiff to pay him for his services and material. Testimony also indicates that the defendant during the course of the fair may have threatened or otherwise brought pressure to bear on the principals of Bicro to insure payment for his services and material. Defendant acknowledged during his testimony, that he in fact on one occasion removed the main electrial breakers from the area which provided electric power to the main performance stage. Admittedly, they were replaced after about fifteen minutes.

The defendant during the evidentiary hearing also indicated that his initial concern in this matter was the collection of monies due him. His testimony indicated that the collection motive preceded the institution of criminal proceedings. He testi-fied that during the fair he told one of the plaintiffs, "If you don't make it good, I was going to push 'It'." These factors combined indicate that the central concern and purpose of all the defendant's actions was collection of monies due him for his services and material.

Additional material incorporated into the record by the Attorney for the Defendant, a letter dated July 3, 1987, some thirty plus days prior to contacting the District Attorney of Columbia County, contains the following:

"You can prevent the filing of these criminal charges if you remit (emphasis provided) to my office a certified check amounting to $5,493.54 within ten (10) days of the receipt of this letter."

The defendant, according to the debtor's schedules, has an unsecured claim in the amount of $21,638,67. Allowing this unsecured creditor to post-petition collection of approximately twenty-five (25%) per cent of its entire unsecured debt by threatening criminal prosecution would undoubtedly allow it to be treated differently from the other unsecured creditors. Defendant is also the largest of the unsecured creditors.

For the reasons stated above, the Court finds that Steve Mackes, a/k/a Mackes Electric, was seeking to utilize the criminal process as a means of extracting or obtaining a preference not accorded to other creditors similarly situated and that this type of creditor action violates both the Bankruptcy Code and the principles as provided in *Pepper v. Litton*, 308 U.S. at 295, 60 S.Ct. at 238. Therefore, the Court holds that Steve Mackes, a/k/a Mackes Electric, together with his agents and employees, is permanently enjoined from any further participation in the criminal prosecution of the debtor, its officers and or any of its employees.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law in the above matter pursuant to Bankruptcy R.P. 7052 and Federal Rules of Civil Procedure 52.

### ORDER

AND NOW, at Wilkes–Barre, this 13th day of January 1988, it is hereby

ORDERED that the Motion for a Permanent Injunction against Steve Mackes, a/k/a Mackes Electric, restraining him from proceeding to criminal prosecution of the debtor is hereby GRANTED; and further

ORDERED that the clerk of the court shall file this document as the judgment of the court.