In re Grant O. FIDLER, Debtor.

Grant O. Fidler, Plaintiff,

v.

Lillian Donahue, et al., Defendants.

Bankruptcy No. BK–S–07–17685–BAM.
Adversary No. 10–01108–BAM.

United States Bankruptcy Court,
D. Nevada.

Oct. 5, 2010.

Christopher Patrick Burke, Las Vegas, NV, for Plaintiff.

Lillian Donahue, Pahrump, NV, pro se.

Terry Campbell, Pahrump, NV, pro se.

Ronald A. Colquitt, Las Vegas, NV, pro se.

Candice Trummell, Tonopah, NV, pro se.

## MEMORANDUM AND ORDER

BRUCE A. MARKELL, Bankruptcy Judge.

### I. Overview

Grant O. Fidler (Fidler), debtor, is the target of a state criminal action relating to the alleged passing of "bad checks" in partial repayment of loans subsequently discharged in his personal bankruptcy proceeding. He asks the court to enjoin the complaining witnesses from testifying and Robert Beckett, the Nye County District Attorney (Beckett), from prosecuting on the theory that these actions are merely alternative efforts to collect a debt which is prohibited by the post-discharge injunction of 11 U.S.C. § 524(a). In so doing, Fidler calls upon the court to reflect on the relationship between the discharge of debt granted in a bankruptcy action and an overlapping prosecution in a criminal action. For the reasons stated below, the court denies Fidler's motion but holds this matter open, pending the outcome of the prosecution, to protect the bankruptcy discharge.

### II. Background

Fidler is subject to a criminal complaint alleging that he passed "bad checks" in connection with various debts subsequently discharged in his chapter 7 bankruptcy proceeding. On two occasions in 2007, Fidler borrowed money from individuals (Lillian Donahue and Terrence Campbell hereinafter "Donahue" and "Campbell"), and allegedly attempted to repay the loans, in part, with checks later returned for insufficient funds. Dkt. No. 3. The check to Donahue was made out and presented to Premier Trust, Donahue's Home Equity Line of Credit (HELOC) provider. *Id.* Fidler also allegedly wrote a check to Campbell when the initial loan was extended, and post-dated the check six months. *Id.* After learning that each of the two checks had been returned for insufficient funds and then finding out that Fidler had filed for bankruptcy, the creditors approached the Nye County Sherriff's Office and filed criminal complaints alleging violations of Nevada law prohibiting issuance of checks without sufficient funds and theft (N.R.S. § 205.130; N.R.S. § 205.132(1) respectively). *Id.*

Fidler argues that the criminal complaints are brought in bad faith, solely motivated by a desire to collect a debt, and therefore properly under the control of the bankruptcy court and subject to injunction.[1] *Id.* Fidler is asking this court to enjoin Donahue and Campbell from providing testimony in any state court criminal proceeding arising out of these matters and to enjoin Beckett from pursuing the prosecution.[2] *Id.* He also raises a num-

---

1. Fidler has not provided any evidence to support this contention. There are no depositions or discovery submitted in support of the motion. The court relies on its own findings of fact to inform its decision regarding the creditors' motivations.

2. Fidler correctly points out in his Motion for Injunctive Relief that recent events may have resulted in personnel changes at the Nye County District Attorney's office. While it is unclear at this point who is driving the prosecution, the Court's will assume an unswerving prosecution and make a determination that

ber of issues of both law and fact relating to the state charges, questioning the viability of those charges. Specifically, he argues that passing a "bad check" for a pre-existing debt is not a violation of Nevada Law. *Id.* at 6 (citing *Hoyt v. Hoffman,* 82 Nev. 270, 416 P.2d 232 (1966), *aff'd, State v. Jarman,* 84 Nev. 187, 189, 438 P.2d 250 (Nev.1968)). He also argues that the check to Donahue was not made payable to her but rather to Premier Trust which did not file a complaint. Dkt. No. 3.

Neither of the complaining witnesses responded to the motion and the Nye County District Attorney did not timely respond. At the hearing, it was argued that because neither Campbell nor Donahue (who was present at the hearing) had responded to the motion, it should be granted by default. *Id.* In the course of the hearing, though, it became apparent that Donahue was represented by counsel (McGimsey), that Debtor's counsel (Burke) was aware of this fact, and had nonetheless failed to serve McGimsey, either personally or via the ECF system. *Id.* As of October 4, 2010, the court has received no evidence that Burke has completed the necessary service.

### III. Analysis

The controlling precedent in this circuit is *Gruntz v. County of Los Angeles (Gruntz )*, and Fidler presents significant factual overlap with *Gruntz. Gruntz v. County of Los Angeles (In re Gruntz )*, 202 F.3d 1074 (9th Cir.2000). By way of background, in *Gruntz* a debtor filed for bankruptcy while in arrears on child support payments. During a transition from chapter 13 to a chapter 11, plan payments were not made to his ex-wife. The Los Angeles County District Attorney brought charges against Gruntz for failure to pay child support, a crime under California law. Cal.Penal Code § 270 (West 2010). Through various subsequent actions, the specifics of which are not relevant to this analysis, Gruntz brought an action in bankruptcy court asserting that the criminal proceeding violated the automatic stay imposed by 11 U.S.C. § 362. Based on the presumed motivations of the complaining witness and the district attorney, Gruntz essentially called the criminal action debt-collection-by-other-means and argued that it was precluded by Section 362. On appeal, after extensive analysis of the constitutional and legal issues implicated and its own history of experimentation with an alternative legal approach, an *en banc* panel of the 9th Circuit ruled that the criminal prosecution did not violate the automatic stay and could proceed unimpeded. *See Gruntz,* 202 F.3d at 1087–88.

▇▇▇ Fidler, reprising in large measure Gruntz's argument, asks this court to stop the state criminal proceeding against him, claiming the prosecution is a debt collection action precluded by the post-discharge injunction of Section 524.[3] Fidler asks this court to enjoin Beckett from prosecuting him and to enjoin Donahue and Campbell from testifying in relation to that prosecution. While Fidler's motivation is understandable, bankruptcy does not provide a petitioner blanket protection from criminal liability. " 'The purpose of bankruptcy is to protect those in financial, not moral, difficulty.' " *Gruntz,* 202 F.3d at 1085 (citing *Barnette v. Evans,* 673 F.2d 1250, 1251 (11th Cir.1982)). This court is not empowered to determine for either

---

will apply to the office regardless of the office holder.

**3.** Gruntz involved bankruptcy's automatic stay whereas Fidler implicates a criminal ac-

tion as a means of post-discharge debt collection, but this is a distinction without a difference as explained below.

state courts or local prosecutors the timing of indictments or the outcome of criminal trials. "[T]he decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (finding courts "properly hesitant" to second-guess a prosecutor's decision to bring charges). By precedent and by statute the adjudication of criminal matters is not the provenance of a bankruptcy court. Indeed, the Code explicitly provides that "[t]he filing of a petition under section 301, 302 or 303 of this title ... does not operate as a stay ... of the commencement or continuation of a criminal action or proceeding against the debtor[.]" 11 U.S.C. § 362(b). For a time the rule in this circuit was that if the bankruptcy court found debt collection to be the motivating factor in a criminal proceeding, it would be subject to the automatic stay. *Hucke v. Oregon,* 992 F.2d 950, 953 (9th Cir.1993). But that precedent was explicitly overturned by *Gruntz. See Gruntz,* 202 F.3d at 1085. It is the law in the 9th Circuit that "[i]nterpreting § 362(b)(1) as rendering the automatic stay as inapplicable to all criminal proceedings is consistent with 'the provisions of the whole law, and to its object and policy.'" *Id.* (citing *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)).

■ The fact that the action requested invokes the injunction against collection of a debt under § 524(a)(2) rather than the automatic stay under § 362 does not change the fundamental relationship between the courts. The discharge affects the debt not the debtor. Bankruptcy may make a debt uncollectible but will not void it *ab initio,* and thus the circumstances leading to and concerning the debt remain susceptible to prosecution. *See generally* 3 COLLIER ON BANKRUPTCY ¶ 362.04 (Alan J. Resnick & Henry J. Sommers, eds., 16th ed.).

■ The specific legal and factual questions raised by Fidler are also beyond the purview of this court to determine. Fidler's claims, that Nevada law does not find passing a bad check relating to a pre-existing debt criminal and that Donahue lacks standing because no bad check was made out to her, are issues of interpretation of state criminal law. Dkt. No. 3. Whether or not the charges are supported by Nevada law and whether or not the prosecution will be able to meet its burden are questions for state courts. By statute and by history, the exclusive federal remedy for improper state prosecution is a writ of *habeas corpus* and certainly not a bankruptcy proceeding. *See Gruntz* at 1086. The precedents Fidler cites in his filings (*In re Caldwell,* 5 B.R. 740 (Bankr. W.D.Va.1980) and *In re Bicro Corp.,* 105 B.R. 255 (Bankr.M.D.Pa.1988)) all predate the controlling precedent within this circuit announced in *Gruntz.* Like Gruntz did before him, Fidler "contends that the purpose of bankruptcy would be thwarted if a criminal prosecution were allowed as a means of debt collection...." *Gruntz,* 202 F.3d at 1085. The 9th Circuit Court of Appeals, sitting *en banc,* too grappled with this question and concluded that:

> [I]t is not for the bankruptcy court to disrupt that sovereign determination [*to prosecute*] because it discerns an economic motive behind the criminal statute or its enforcement. In the automatic stay exception, Congress clearly has instructed federal courts not to allow bankruptcy proceedings to impede such an exercise of state police powers.

*Id.* at 1086.

■ The penalty in Nevada for issuing checks without sufficient funds is one to four years in prison, and a fine of up to $5,000. NEV.REV.STAT. § 193.130 (2009).

Additionally, "the court shall order restitution." Nᴇᴠ.Rᴇᴠ.Sᴛᴀᴛ. § 205.130 (20009). Like *Gruntz*, we hold that there is "no rationale or justification for severing economic and noneconomic ramifications of the debtor's criminal conduct." *Gruntz*, 202 F.3d at 1085–86 (citation omitted). While the restitution obligation is subject to limitations, the state courts are not precluded by bankruptcy law from imposing it. *See* 3 Cᴏʟʟɪᴇʀ ᴏɴ Bᴀɴᴋʀᴜᴘᴛᴄʏ ¶ 362.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("A criminal court may jail or fine the debtor for actions before or after commencement of a case," including failure to pay criminal restitution.).

There is no certainty that Fidler will be convicted on these charges and no certainty that, if convicted, he will be obligated to repay restitution to Donahue or Campbell. At such time as those outcomes move from hypothetical to actual, and as required, this court can and will deal with the question of any monetary component that may arise out of a successful prosecution. At this point it is sufficient to rule that any criminal proceedings are not subject to any bankruptcy injunction and this court will take no action to bar them.

██ While not always the case, the fact pattern here presents a secondary set of questions with respect to the complaining witnesses. The Court takes notice of the sequencing of the bankruptcy filing, the complaint sworn out to the Nye County Sheriff, the dismissal of Donahue and Campbell's claims in this court, and the filing of criminal charges by Beckett. It does seem clear from the record that Donahue and Campbell are attempting to use the criminal proceeding as an end-run

around the discharge order. It is possible to stand aside while a sovereign criminal prosecution goes forward and yet find that specific individuals have taken steps in violation of the Court's order in an attempt to collect a discharged debt. Protecting that discharge is a core function of the bankruptcy court. This Court cannot enjoin a prosecutor from pursuit of a criminal charge, but it can sanction those who attempt to collect a debt that has been discharged. Thus, while the court today denies Fidler's motion to enjoin the testimony of Donahue and Campbell and to enjoin Beckett from pursuing prosecution, the court further finds that the motivation of Donahue and Campbell appears so improper that, if carried to its conclusion in voluntarily testifying in the state court case, could constitute a violation of the bankruptcy discharge.[4] Had the debtor presented admissible evidence of this intent at present, perhaps more could be done, but all that debtor has presented are unauthenticated copies of the criminal complaints allegedly filed by Donahue and Campbell.

██ This cannot be allowed to stand.[5] The discharge authority of a bankruptcy court is "an equitable remedy precluding the creditor, on pain of contempt, from taking any actions to enforce the discharged debt." *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir.2008), *rev'd on other grounds* —— U.S. ——, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). It is further emphasized that "discharge 'provides for a broad injunction against not only legal proceedings, but also any other acts to collect a discharged debt as a personal liability of

---

**4.** Their actions are akin to a dog in a manger. *See* Aesop's Fables.

**5.** "I do not agree that the dog in a manger has the final right to the manger even though

he may have lain there for a very long time." Wɪɴꜱᴛᴏɴ Cʜᴜʀᴄʜɪʟʟ, Tᴇꜱᴛɪᴍᴏɴʏ Bᴇꜰᴏʀᴇ ᴛʜᴇ Pᴇᴇʟ Cᴏᴍᴍɪꜱꜱɪᴏɴ, 1937 (as quoted in Martin Gilbert, Churchill and the Jews 120 (2007)).

the debtor.'" *Id.* at 1200 (citation omitted). For these reasons and on this authority, the court will retain this matter pending the outcome of the criminal prosecution. At that time, upon presentation of admissible evidence of a discharge violation, it will consider imposing sanctions up to and including disgorgement of any restitution that may result from a conviction on the relevant charges.

## IV. Conclusion

Because the court lacks the authority to intervene in or enjoin any state court criminal proceeding, Fidler's Motion for Injunctive Relief is hereby DENIED. However, because it is this court's duty to protect the bankruptcy discharge, this matter will remain open pending the outcome of the state court criminal prosecution, and the court will protect the bankruptcy discharge through civil sanctions as may become necessary.