**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   WW-11-1056—PaJuWa |
| | ) | |
| RYAN C. NASH, | ) | Bk. No.   09-18806—MLB |
| | ) | |
| Debtor. | ) | Adv. No.   10-01289—MLB |
| _____ | ) | |
| | ) | |
| RYAN C. NASH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| CLARK COUNTY DISTRICT | ) | |
| ATTORNEY'S OFFICE, Bad Check | ) | |
| Diversion Unit; HARD ROCK | ) | |
| HOTEL/HARD ROCK CAFÉ & CASINO;) | | |
| HARD ROCK HOTEL HOLDINGS, LLC,) | | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on October 21, 2011
at Seattle, Washington

Filed - February 7, 2012

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding

---

Appearances:   Christina L. Henry argued for appellant Ryan C.
Nash.

---

Before:  PAPPAS, JURY and WALLACE,[1] Bankruptcy Judges.

---

[1]  Hon. Mark S. Wallace, Bankruptcy Judge for the Central
District of California, sitting by designation.

PAPPAS, Bankruptcy Judge:

Chapter 7[2] debtor Ryan C. Nash ("Nash") appeals the bankruptcy court's judgment declaring that Nash's prepetition debt to Hard Rock Café and Casino ("Hard Rock") was discharged in his bankruptcy case, but denying sanctions against Hard Rock and the Clark County, Nevada, District Attorney's Office ("the DA") for violating the discharge injunction. We AFFIRM.

**FACTS[3]**

In 2007 and 2008, gambling was Nash's principal occupation and source of income. He traveled from his home in Washington State to Las Vegas approximately once per month for several days. As a frequent customer at Hard Rock, Nash was approved for a "marker account," essentially a line of credit on which he could draw to gamble.[4]

In October and November 2008, Nash had insufficient funds in

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] Because the DA and Hard Rock did not participate in the adversary proceeding or appear in this appeal, we rely solely on the facts presented in Nash's brief that are supported in the record.

[4] See Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 529 (9th Cir. 2011) ("A marker is a gambling credit instrument that allows a gambler to receive all or part of the credit line the casino has approved for him, based on the gambler's prior credit application with the casino. Once the gambler and a casino representative sign the marker, the gambler may exchange the marker for gambling tokens, or chips. If the gambler does not pay the marker when he has finished gambling, the marker is outstanding and the casino may later submit the marker, like a check, to the gambler's bank for payment.").

his bank account to cover $12,500 in markers owed to Hard Rock. Hard Rock referred these debts to the Bad Check Diversion Unit of the DA. The DA sent Nash a letter in January 2009, demanding full payment of the markers, plus administrative fees, within ten days. Nash contacted the DA and was informed that, to avoid prosecution, he could repay the debt in six monthly payments starting on February 26, 2009. At the time, Nash was working in a restaurant earning $200 per week and was unable to make the first payment.

On March 26, 2009, the DA sent Nash a second letter, informing him that a criminal complaint had been filed against him in Las Vegas, and that a warrant for his arrest had been issued. The letter indicated that a copy of the complaint was attached, but Nash insists that he never saw the complaint.

Nash filed a petition under chapter 7 of the Bankruptcy Code on August 27, 2009. In his Schedule F, he listed an undisputed debt of $13,876 owed to Hard Rock. Neither the DA nor Hard Rock appeared in the bankruptcy case. Nash was granted a discharge in the bankruptcy case on January 20, 2010.

On March 22, 2010, Nash was arrested by border police while returning to the United States from Vancouver, B.C., based on the outstanding warrant from Clark County.

Nash retained counsel, Ms. Huelsman, who moved to reopen the bankruptcy case on April 1, 2010. The motion was granted on April 9, 2010.

Huelsman contacted the DA on April 8. An attorney for the DA informed Huelsman that the DA was aware of Nash's bankruptcy case and discharge, but that the DA would be pursuing the matter

3

as a criminal proceeding. Huelsman later testified that the DA lawyer told her "if you can work out something with the Hard Rock, then we will postpone — and the word I do know he used was 'postpone' — the criminal case." Hr'g Tr. 16:7-10 (Dec. 14, 2010).

Huelsman contacted a manager at Hard Rock by phone later the same day. In the telephone conversation, the Hard Rock manager told Huelsman that Hard Rock was aware of Nash's bankruptcy case and discharge, but that its position was not impacted by the discharge because Hard Rock had originally acted in response to Nash's criminal activity. The manager explained Hard Rock's general policies concerning payment of past-due marker accounts to Huelsman, but the manager made no demand for payment. Instead, perhaps strategically, the manager suggested that Nash's counsel "get back to me if you want to make us any kind of firm offer." Hr'g Tr. 18:18-19 (Dec. 14, 2010).

On May 12, 2010, after voluntarily waiving extradition from Washington to Nevada, Nash was arraigned in Clark County and released on bail. He returned to Clark County on October 31, 2010, where he entered into a settlement agreement with the DA. Under the terms of that agreement, Nash agreed to pay $500 per month until the full amount of the debt was paid off.

On May 26, 2010, Nash filed an adversary "Complaint for Sanctions for Violation of the Discharge Injunction" against the DA and Hard Rock in the bankruptcy court. The complaint sought a declaratory judgment that his debt to Hard Rock was discharged, an injunction against Hard Rock and the DA to prevent any further collection activities, and the imposition of sanctions against

4

Hard Rock and the DA under § 105(a) for their intentional violation of the discharge injunction.

Neither Hard Rock nor the DA responded to the complaint. Nash filed a motion for entry of default on July 12, 2010. The motion was not contested, and the bankruptcy court entered an Order of Default on August 11, 2010. Nash then moved for entry of a default judgment, which the bankruptcy court set for an evidentiary hearing.

Only Nash and his counsel appeared at the hearing on December 14, 2010. Although the hearing was uncontested, the bankruptcy court directed Nash to present evidence in support of his claims. The court cautioned Nash's attorney that, although a declaratory judgment that his debt was discharged was likely to be granted, the Ninth Circuit's decision in Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir. 2000) (en banc), suggested that sanctions against Hard Rock and the DA would be very difficult to establish.

At the hearing, Nash presented two witnesses, Huelsman and Nash. Huelsman testified about the phone conversations she had with the DA's attorney and the Hard Rock manager on April 8, 2010. Nash then testified regarding his experiences, giving particular attention to his time he spent in jail and his alleged injuries he suffered during his ordeal. Because counsel for Nash stated that she was not acquainted with In re Gruntz, at the conclusion of the evidence, the bankruptcy court invited Nash to file a supplemental brief, as well as proposed findings of fact and conclusions of law. The court took the issues under submission.

5

Nash filed a supplemental brief and proposed findings and conclusions on December 23, 2010. Nash attempted to distinguish In re Gruntz as applicable only to actions for automatic stay violations under § 362, and not to discharge violations under § 524(a).

The bankruptcy court convened a hearing on January 7, 2011, at which it announced its decision. The court granted declaratory relief that Nash's debt to Hard Rock had been discharged in the chapter 7 case. However, the court declined to grant any further relief against Hard Rock, finding that any collection actions it took occurred before Nash's bankruptcy and, therefore, did not violate the discharge injunction. As to the alleged discharge violations by the DA, the court concluded that, given the facts, there was no "meaningful distinction" between Nash's § 524(a) discharge violation claims and the automatic stay violation claims under § 362 alleged in In re Gruntz and, therefore, no sanctions would be awarded against the DA.

The bankruptcy court entered a judgment on January 19, 2011, providing that Nash's prepetition debt to Hard Rock had been discharged, but that Nash "is entitled to no further relief for his claims against the Defendants in this adversary proceeding."

Nash filed this timely appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in

6

rejecting Nash's claims for sanctions under § 105(a) against the DA and Hard Rock for alleged violations of the § 524(a) discharge injunction.

## STANDARD OF REVIEW

An award or denial of sanctions under § 105(a) is reviewed for abuse of discretion. Missoula Fed. Credit Union v. Reinertson (In re Reinertson), 241 B.R. 451, 454 (9th Cir. BAP 1999).

In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the correct legal rule was applied, we then consider whether its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. Only in the event that one of these three apply are we then able to find that the bankruptcy court abused its discretion. Id.

To the extent this appeal requires the Panel to review the bankruptcy court's interpretation of § 524(a), its decision is reviewed de novo. Smith v. Rojas (In re Smith), 435 B.R. 637, 642–43 (9th Cir. BAP 2010) (citing Mendez v. Salven (In re Mendez), 367 B.R. 109, 113 (9th Cir. BAP 2007)).

## DISCUSSION

### I.

### Applicability of the Barrientos decision in this appeal.

The bankruptcy court entered the judgment that is the subject of this appeal in the adversary proceeding on January 19,

7

2011. About a month later, during the pendency of this appeal, the Ninth Circuit published an Opinion in which it held that an action "for contempt for violation of a discharge injunction under § 524 must be brought via motion in the bankruptcy case, not via an adversary proceeding." Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1188 (9th Cir. 2011). Barrientos is unclear, however, as to the proper procedure where, in addition to contempt damages, a debtor seeks other or additional relief of the sort that usually requires an adversary proceeding. See Rule 7001(6) and (9) (providing that an adversary proceeding is required for a proceeding to determine dischargeability of a debt or to obtain a declaratory judgment).

In this case, in addition to seeking monetary sanctions and an injunction, Nash's adversary complaint prayed for a declaratory judgment that his debt to Hard Rock was discharged in his bankruptcy. An adversary proceeding targeting this type of relief is proper under Rule 7001(6) and (9) (providing for an adversary proceeding for a declaratory judgment or for a determination of dischargeability of a debt).[5]

Since it was announced during this appeal, the Barrientos decision was not briefed nor otherwise addressed by Nash. However, because of the multiple forms of relief sought by Nash in his complaint, the procedural history of this action, and the

---

[5] The bankruptcy court arguably blessed Nash's procedural approach when it reopened the bankruptcy case so he could "file an adversary proceeding for violation of the discharge injunction against the parties." Bankr. dkt. no. 35. Presumably acting on these instructions, Nash commenced the adversary proceeding and litigated it to a conclusion after eight months.

8

position adopted by the Panel on the merits of the issues below, we conclude it would not serve the interests of justice to remand this matter to the bankruptcy court solely to allow it to rehear Nash's request for relief as a contested matter rather than in an adversary proceeding. See Rule 1001 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."). Accordingly, without deciding whether Barrientos is implicated in this appeal, we will address the substance of Nash's arguments.

## II.

### Neither the DA nor Hard Rock violated the discharge injunction.

In his adversary complaint, Nash sought three forms of relief: a declaratory judgment that his debt to Hard Rock had been discharged in the bankruptcy case, injunctive relief to prevent Hard Rock or the DA from future attempts to collect the discharged debt, and the imposition of compensatory sanctions pursuant to § 105(a) against Hard Rock and the DA. The bankruptcy court granted the declaratory relief he sought, and Nash withdrew the request for injunctive relief at the hearing on December 14, 2010. Therefore, the sole issue raised in this appeal is whether the bankruptcy court abused its discretion when it denied Nash's request for monetary sanctions against Hard Rock and the DA.

In a chapter 7 case, with exceptions not relevant here, "[t]he [bankruptcy] court shall grant the debtor a discharge." § 727(a). When entered, that order "discharges the debtor from all debts that arose before the date of the [bankruptcy filing]." § 727(b). To give the discharge teeth, § 524(a) prescribes the

9

legal effect of a discharge:

> (a) A discharge in a case under this title–. . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

A party that knowingly violates the discharge injunction can be held in contempt under § 105(a). Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002). The party seeking contempt sanctions for violation of the discharge injunction has the burden of proving, by clear and convincing evidence, that the sanctions are justified. Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1205 n.7 (9th Cir. 2008), aff'd 130 S. Ct. 1367 (2010). To prove that a sanctionable violation of the discharge injunction has occurred, the debtor must show that the creditor: "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." Espinosa, 553 F.3d at 1205 n.7 (adopting the standard articulated in Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996)). If a bankruptcy court finds that a party has willfully violated the discharge injunction, the court may award actual damages, punitive damages and attorney's fees to the debtor. Espinosa, 553 F.3d at 1205 n.7.

The Ninth Circuit has held that the first prong of the Hardy test requires that the bankruptcy court be shown that the target creditor knew that the discharge injunction was applicable to its claim. ZiLOG, Inc. v. Corning (In Re ZiLOG, Inc.), 450 F.3d 996, 1007-09 (9th Cir. 2006). But, as discussed below, the evidence

10

in this case shows that neither Hard Rock nor the DA acknowledged that the discharge injunction in Nash's bankruptcy case was applicable to collection of marker account debt. As they explained to Nash's attorney, it was instead their view that, because the matter was a criminal proceeding, it was not impacted by the discharge.

Moreover, as to the second prong, requiring that Hard Rock intend the actions which violated the discharge injunction, the evidence shows that Hard Rock took no post-discharge actions that violated the discharge injunction, and any actions taken by the DA were not sanctionable under the prosecutorial immunity exception to the discharge injunction acknowledged in In re Gruntz. We therefore agree with the bankruptcy court that sanctions were not justified against either Hard Rock or the DA.

**A.**

**Hard Rock did not violate the discharge injunction.**

The bankruptcy court found that Hard Rock had not taken any collection actions against Nash after he filed his bankruptcy petition. Consequently, the court concluded the Hard Rock could not have violated the discharge injunction. We agree.

On appeal, Nash does not explicitly charge Hard Rock with actions that violated the injunction. Rather, Nash apparently argues, based upon an alleged alliance of Hard Rock with the DA, that the DA's actions should somehow be imputed to Hard Rock. The bankruptcy court correctly dismissed Nash's charges as "hypothetical and irrelevant."

Nash points to two instances of post-discharge contact between Nash and Hard Rock, without explaining how they violated

11

the injunction. First, through testimony of his former attorney, Huelsman, Nash cites the telephone meeting between Huelsman and the Hard Rock manager. However, it is undisputed that this contact was suggested by the DA, and that the phone conversation was initiated by Huelsman, not Hard Rock. The record is clear that there were no post-discharge contacts between Nash and Hard Rock initiated by Hard Rock.

Post-discharge contacts between a debtor and creditor occurring at the debtor's initiative do not necessarily violate the discharge injunction. Indeed, the Bankruptcy Code acknowledges that some post-discharge contacts with creditors initiated by the debtor are necessary. See, e.g., § 524(c) (providing that a debtor may enter into a reaffirmation agreement with a creditor under specified procedures). However, whether initiated by the debtor or creditor, the creditor may not use a contact to "coerce" or "harass" the debtor. Pratt v. General Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006) ("In assessing violations of . . . the discharge injunction, the core issue is whether the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly."); Cox v. Zale Del., Inc., 239 F.3d 910, 912 (7th Cir. 2001) (provided there is no "coercion or harassment of the debtor," there is no post-petition attempt to collect a debt). Whether a creditor has "coerced" a debtor is determined by reference to the affirmative acts the creditor took during the contact with the debtor, or afterwards, to collect the debt. In re Dendy, 396 B.R. 171, 179 (Bankr. D.S.C. 2008) (noting that to show a § 524(a) violation "require[s] some affirmative collection efforts on the part of

12

the creditor").

In this case, the contact between Nash and Hard Rock was initiated by the debtor through his attorney, and at the direction of the DA. Hard Rock merely responded to a phone inquiry by Nash's lawyer and made no further attempts to collect on the debt. Since there were no other contacts between Nash and Hard Rock post-discharge, there is no basis to find that Hard Rock acted to "harass" Nash. Under these facts, the bankruptcy court properly found that Hard Rock took no post-discharge acts that would violate the discharge injunction.

In his brief, Nash suggests that "[t]o avoid further prosecution, Mr. Nash settled out of court with Clark County and Hard Rock on October 31, 2011." Op. Br. at 9. The implication of this statement is that Hard Rock was actively involved in the settlement agreement negotiations concerning the criminal prosecution, and that conduct violated the discharge injunction. But, again, there is no evidence in the record that Hard Rock participated in the settlement negotiations concerning the bad check charges. Indeed, the record suggests the contrary. In his testimony before the bankruptcy court, Nash described the settlement he reached with the DA. At the end of that description, Nash stated, "And the DA's office agreed to that." Hr'g Tr. 52:12 (Dec. 14, 2010). Nash made no mention in his testimony of Hard Rock's participation in the settlement agreement.

Moreover, at the end of the hearing, the bankruptcy court invited Nash's attorney to submit Proposed Findings of Fact and Conclusions of Law. While the court declined to accept or

13

endorse them, Nash's proposed Finding of Fact 40 recites that,

> Debtor returned to Clark County on October 31, 2010 for his second court appearance. . . . He appeared [] in court and worked out an agreement with Clark County DA's office to make monthly payments of $500 per month until the full amount of the debt is paid off, starting in January 2011.

Again, there is no mention in Nash's proposed findings detailing any participation by Hard Rock in negotiating the settlement agreement.

In sum, as the bankruptcy court correctly determined, no evidence was submitted by Nash to show that Hard Rock engaged in post-discharge collection activity. Of the two incidents alleged in the brief, the first was a contact initiated by Nash's lawyer at the direction of the DA, and there is no evidence in the record to support the existence of the second. As to the notion that Hard Rock violated the discharge through collusion with the DA, the bankruptcy court rejected these unsupported allegations as "hypothetical and irrelevant."

The bankruptcy court did not abuse its discretion in declining to award sanctions against Hard Rock.

**B.**

**Consistent with the Ninth Circuit's decision in In re Gruntz, the DA Did Not Violate the Discharge Injunction.**

During the adversary proceeding, the bankruptcy court cautioned Nash's attorney that the Ninth Circuit's opinion in In re Gruntz might prove a formidable obstacle to Nash obtaining sanctions against the DA. The bankruptcy court was correct in this observation.

The Gruntz decision largely concerns "the proper role of

14

federal bankruptcy courts, if any, in state criminal proceedings." In re Gruntz, 202 F.3d at 1084. This analysis is of critical importance in this appeal.

The Ninth Circuit began its discussion by noting a strong policy basis for its decision:

> We maintain the "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." Kelly v. Robinson, 479 U.S. 36, 47, 93 L. Ed. 2d 216, 107 S. Ct. 353 (1986). This rule reflects a "fundamental policy against federal interference with state criminal prosecutions." Younger v. Harris, 401 U.S. 37, 46, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971). It also recognizes that "the right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." Kelly, 479 U.S. at 47.

Id. The court emphasized the importance of this policy when it described it as the "philosophy in mind" in its discussion of the relationship of state court criminal proceedings to bankruptcy cases and other civil proceedings. Id.

The Ninth Circuit then examined the debtor's argument that the purpose of the criminal proceeding in state court was, at bottom, to collect a debt. Gruntz suggested that the Ninth Circuit's opinion in Hucke v. Oregon, 992 F.2d 950 (9th Cir. 1993), applied, which held that, if a criminal proceeding has the collection of a debt as its underlying aim, then the automatic stay imposed by § 362(a)(6)[6] would enjoin the criminal action.

---

[6] **§ 362. Automatic stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of-. . . (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this
(continued...)

15

_Id._ at 953. The en banc court responded to this argument:

> Not only does our notion of cooperative federalism caution against interference with ongoing state criminal proceedings, but the theory of bankruptcy law does as well. "The purpose of bankruptcy is to protect those in financial, not moral, difficulty." _Barnette v. Evans_, 673 F.2d 1250, 1251 (11th Cir. 1982). . . . . . . Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states' interest in prosecuting criminals. The State of California has chosen to criminalize a parent's failure to support a dependent child. _See_ Cal. Penal Code § 270. That is a judgment reserved to the state; it is not for the bankruptcy court to disrupt that sovereign determination because it discerns an economic motive behind the criminal statute or its enforcement.

_In re Gruntz_, 202 F.3d at 1085-86.

As can be seen, the court explicitly rejected the _Hucke_ rule providing that if the "primary motivation" of the prosecution is debt collection then the prosecution violates the stay. In place of the primary motivation standard, the _Gruntz_ court held that prosecutorial discretion was the preeminent concern:

> [A]ny criminal prosecution of the debtor is on behalf of all the citizens of the state, not on behalf of the creditor. _See Davis v. Sheldon (In re Davis)_, 691 F.2d 176, 178-79 (3d Cir. 1982). Once the state has made an independent decision to file criminal charges, the prosecution belongs to the government, not to the complaining witness. We cannot, and should not, "require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution." _Id._ at 179. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." _Bordenkircher v. Hayes_, 434 U.S. 357, 364, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978). As the Supreme Court noted

---

[6](...continued) title[.]

16

in Wayte v. United States, 470 U.S. 598, 607, 84 L. Ed. 2d 547, 105 S. Ct. 1524 (1985), "this broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." This admonition applies with special force to federal enjoinment of state criminal actions, such as that urged by Gruntz, because the stay would interdict state prosecution at its inception, based upon a bankruptcy court's surmise of the prosecutor's "true" motives.

Id. at 1086.

The Gruntz court concluded its analysis with the following observation:

The veneer of this case suggested jurisdictional discord among the bankruptcy, federal habeas corpus and state court criminal systems; in reality, there is harmony. "Federalism in this nation relies in large part on the proper functioning of two separate court systems." Davis, 691 F.2d at 179. In turn, the operation of each system depends on freedom from unwarranted interference by the other. State criminal prosecutions should commence and continue unimpeded by the federal bankruptcy courts.

Id. at 1087-88.

Although In re Gruntz was decided in the context of an alleged violation of the § 362(a) automatic stay, the opinion represents a strong policy statement commanding noninterference by the bankruptcy courts in matters of the state criminal justice system. In this case, the bankruptcy court noted that, after several readings of In re Gruntz, it could find no meaningful difference between the § 362(a) stay and the § 524(a) discharge regarding noninterference in a criminal proceeding by a bankruptcy court. The bankruptcy court's view is supported by two other bankruptcy court decisions with facts closely on point with this case.

In In re Byrd, 256 B.R. 246 (Bankr. E.D.N.C. 2000), Byrd was

17

a gambler who traveled from his home in North Carolina to Las Vegas. In April 1998, he presented a check for $3,000 to Circus Circus Las Vegas, and five checks in the amount of $5,000 each to Caesar's Palace Casino. All of the checks were returned unpaid by Byrd's bank. The casinos notified the Clark County District Attorney's Bad Check Diversion Unit, which sent notices and warnings of prosecution to Byrd. Id. at 248. A warrant for Byrd's arrest was issued, but Byrd was not aware of the warrant.

Byrd filed a petition for relief under Chapter 7, listing the casinos as creditors. The casinos did not object to discharge of their claims against Byrd, and on December 14, 1998, Byrd received a discharge. Id.

On May 2, 2000, Byrd was involved in an automobile accident. When local police discovered the outstanding warrant, he was arrested. Byrd challenged the state criminal proceedings as a violation of the discharge injunction.

Noting In re Gruntz, the bankruptcy court held that "governmental prosecutors may initiate and continue criminal prosecutions without violating the automatic stay even if, as in this case, the primary purpose of the prosecution is to collect a dischargeable debt."[7] In re Byrd, 256 B.R. at 256.

---

[7] There is one significant distinction between Byrd and this case. Byrd paid full restitution of his debt to the Clark County District Attorney's office, and that sum was paid to the creditors in full satisfaction of Byrd's debts. The bankruptcy court ruled that the creditors need not disgorge those payments, because restitution awards are nondischargeable under § 523(a)(7).

In Nash's case, the criminal process had not yet been completed when he commenced his adversary proceeding. In
(continued...)

18

In Fidler v. Donahue (In re Fidler) 442 B.R. 763 (Bankr. D. Nev. 2010), Fidler borrowed money from two individuals and later allegedly repaid the loans with bad checks. Fidler filed a chapter 7 petition, listing the debts to the individuals. The debtor was granted a discharge. Id. at 765.

In response to criminal complaints filed against him by the Nye County, Nevada, Sheriff's office for allegedly writing bad checks, Fidler commenced an adversary proceeding to enjoin the county prosecutor from pursuing Fidler. Fidler argued that the criminal prosecution amounted to debt collection action in violation of the discharge injunction of § 524(a).

The bankruptcy court ruled that In re Gruntz was controlling. As to the argument that In re Gruntz only applied to § 362(k) claims for violation of the automatic stay, the court observed that such was a "distinction without a difference." In re Fidler, 442 B.R. at 766 n.3. "The fact that the action requested invokes the injunction against collection of a debt under § 524(a)(2) rather than the automatic stay under § 362 does not change the fundamental relationship between the courts." Id. at 767.

Simply put, we agree with the bankruptcy court in this case,

[7](...continued)
granting Nash's request for declaratory judgment that his debt to Hard Rock was discharged, the court cautioned Nash that "I don't know that it does you any good, because it doesn't affect the prosecution or the deferred payments for deferred prosecution." Hr'g Tr. 7:24-8:1 (Jan. 7, 2011). In other words, while Nash's debt to Hard Rock has been discharged as a claim in the bankruptcy case, any restitution awards in the criminal proceedings would be legally distinct obligations.

19

and the other decisions cited, that the <u>Gruntz</u> analysis applies not only in the context of a claim for violation of the automatic stay, but also where the injury alleged is a discharge violation. The strong public policy expressed in <u>Gruntz</u> advises against any interference by the bankruptcy court in the decisions of state prosecutors to pursue criminal charges and prevented the bankruptcy court from granting sanctions against the DA. Moreover, avoiding a bankruptcy conflict with criminal prosecutions would seem to be even more influential in the context of enforcement of the bankruptcy discharge, a permanent injunction, as compared to the automatic stay, a temporary injunction. Because enforcement of the Nash discharge under the facts would interfere with the Nevada criminal proceedings, and given <u>In re Gruntz</u>, we conclude that the bankruptcy court did not abuse its discretion in denying sanctions against the DA.

**CONCLUSION**

We AFFIRM the judgment of the bankruptcy court.