[Civ. No. 6277. Fourth Dist. Jan. 18, 1960.]

HENRY L. HUNT et al., Respondents, v. KEITH L. PHINNEY, Appellant.

[Civ. No. 6278. Fourth Dist. Jan. 18, 1960.]

HENRY L. HUNT et al., Respondents, v. JAY LEE COWDERY, Appellant.

[Civ. No. 6279. Fourth Dist. Jan. 18, 1960.]

HENRY L. HUNT et al., Respondents, v. IRWIN R. WHITE, Appellant.

[Civ. No. 6280. Fourth Dist. Jan. 18, 1960.]

HENRY L. HUNT et al., Respondents, v. CARROLL COWDERY, Appellant.

[Civ. No. 6281. Fourth Dist. Jan. 18, 1960.]

HENRY L. HUNT et al., Respondents, v. ROBERT H. BETTS, Appellant.

[Civ. No. 6282. Fourth Dist. Jan. 18, 1960.]

HENRY L. HUNT et al., Respondents, v. JAMES R. HINKLE et al., Appellants.

Robert H. Lund for Appellants.

Mize, Larsh, Mize & Hubbard and Royal E. Hubbard for Respondents.

MONROE, J. pro tem.*—The above-entitled cases have, by stipulation of the parties, been consolidated upon appeal and have been submitted upon one set of briefs. The actions are similar and are for injunction. Upon the application of plain-

*Assigned by Chairman of Judicial Council.

tiffs, a temporary injunction was granted against each of the defendants, from which orders the defendants appeal.

The plaintiffs are a partnership engaged in the marketing of dairy products, doing business under the name of "Cal-Va-Dairy." These products were distributed in trucks operated by drivers, to each of whom was assigned a designated route. In January, 1958, the plaintiffs entered into written agreements with each of the defendants, all of whom were route drivers, and by which it was sought to establish the status of each driver to be a distributor or independent contractor rather than an employee. The agreements are identical in terms except for the parties involved. In each contract, the distributor is given an option to purchase the route assigned to him and the equipment used in the delivery of products thereon, and it is provided that each driver shall carry indemnity insurance upon the vehicle which he operates. In *Mountain Meadows Creamery* v. *Industrial Accident Commission,* 25 Cal.App. 2d 123 [76 P.2d 724], it was held that drivers operating under similar contracts were independent contractors. Of particular interest in this litigation is section 7, which reads as follows:

"7. It is hereby further agreed, in consideration of the foregoing and in further consideration of the fact that first party's name has heretofore been associated with the origin and development of said business to the point where first party might lose the goodwill of customers on said route in case of abrupt termination of the dairy service to said customers, that in case of any accident, emergency or any other cause which might interfere or threaten to interfere with the proper distribution of said products, temporarily or otherwise, and thus leave customers without the foodstuffs normally delivered by second party, and which situation in the opinion of first party might warrant such action, first party may without notice take over the route, equipment and business of second party and operate the same."

In each of the cases, and with respect to each of the drivers, except in the case of defendant Jay Lee Cowdery, it is alleged in substance that the defendant driver refused to make deliveries to the customers upon their respective routes in the period from December 5 to December 8, inclusive, thereby causing an abrupt termination of dairy service to the customers. With respect to the defendant Jay Lee Cowdery, it is alleged that pursuant to the terms of the written contract, it

was terminated by the delivery to him of 30 days' written notice.

It is further alleged that each of the defendants has in his possession a truck used in making deliveries and other property of the plaintiffs consisting of milk bottles and milk crates, and also has possession of route books or records of customers showing the identity of each of the customers served. It is further alleged that each of the defendants, upon demand, refused to deliver the things so held to the plaintiffs. Plaintiffs asked for a temporary mandatory injunction requiring the surrender and delivery to plaintiffs of the things described. This injunction was granted and the appeals follow.

 The appellants contend in substance that, pursuant to the law as established and defined by the Supreme Court of the United States, the Federal Government has preempted the field with regard to labor relations and labor controversies and that therefore the state courts have no jurisdiction to grant injunctive relief. They cite, among others, the following cases: *San Diego Building Trades Council* v. *Garmon* (1959), 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 755]; *Guss* v. *Utah Labor Relations Board* (1957), 353 U.S. 1 [77 S.Ct. 598, 1 L.Ed.2d 601]; *Amalgamated Meat Cutters* v. *Fairlawn Meats, Inc.* (1957), 353 U.S. 20 [77 S.Ct. 604, 1 L.Ed.2d 613]; *Weber* v. *Anheuser-Busch, Inc.* (1955), 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546].

In support of opposition to the granting of the injunction, it is alleged that disputes arose between the plaintiffs and the defendants growing out of defendants' proposed affiliation with a labor union; that the plaintiffs were guilty of unfair labor practices in that they brought pressure to bear upon the defendants in an endeavor to prevent them from becoming so affiliated; and that the cessation of deliveries complained of was occasioned because the parties were engaged in a strike. They assert that this strike was the result of unfair practices on the part of the plaintiffs. It is contended, therefore, that the injunctions sought have to do with a labor dispute and that therefore the court had no jurisdiction to grant a preliminary injunction.

There could be no question that, as the law stood at the time of the granting of the preliminary injunction, the Supreme Court of the United States had established that where a business "affected" interstate commerce, jurisdiction of labor controversies was in the National Labor Relations Board, to the exclusion of the state courts. The affidavits filed in the case

at bar indicate that at least some of the products handled by the plaintiffs in their dairy business are manufactured in other states. As is pointed out in the case of *San Diego Building Trades Council* v. *Garmon, supra,* the federal legislation has not deprived the state courts of all jurisdiction, but only of jurisdiction to determine labor controversies. It is there pointed out that if, in connection with a labor controversy, one party or the other commits a common law tort, action for damages therefor can be entertained by the state court.

As has been pointed out by the Supreme Court of California in *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board,* 52 Cal.2d 568 [343 P.2d 23], the exact limits of the remaining jurisdiction in the state courts has not been definitely defined as applied to all cases. The diligence of counsel in the case at bar has revealed no decided cases involving a situation similar to that here involved or disposing of the question.

It is to be noted that the written contracts executed by each of the defendants have definitely defined the property rights of the parties as to those things involved. Under the circumstances, as alleged in the complaints, the plaintiffs are apparently entitled to the immediate possession of the trucks, the milk bottles and milk cases described.

It is further alleged that the retention of the lists of customers or records thereof will tend to depreciate or destroy the goodwill of the business by preventing access to those customers.

It has been repeatedly held that the goodwill of a business is property and as such will be protected by the courts. (*Miller* v. *Hall,* 65 Cal.App.2d 200 [150 P.2d 287] ; *Smith* v. *Bull,* 50 Cal.2d 294 [325 P.2d 463].) In the leading case of *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, 99 [130 P. 1180, Ann. Cas. 1914C 628, 44 L.R.A. N.S. 1159], referring to a route list similar to that here involved and held by party who had executed a similar contract, the court said: "This list, even though in part prepared by him, was the absolute property of plaintiff and was a valuable part of its property."

In *George* v. *Burdusis,* 21 Cal.2d 153, 161 [130 P.2d 399], the court said: "And by leaving the employment of the appellants without giving them a list of the customers which he had acquired during the time he was working for them and who were still using the supplies of the partnership, he took from them an interest which equity will protect."

There is nothing in the orders for temporary injunction issued in any of the cases as against any of the defendants that

undertakes to determine or interfere with any labor controversy in which the parties are involved. There is nothing in any of the orders which seeks to affect the right of the defendants to organize, to engage in collective bargaining or to strike. These orders affect only the right of possession to articles of property which right is recognized and defined by the express written agreement of the parties. There is nothing in the decisions of the Supreme Court of the United States which purports to limit the power and jurisdiction of the courts of California to determine and adjudicate the rights of residents of this state to possession of personal property. The showing before the trial court indicates that possession of property to which the plaintiffs were entitled was being withheld. The question of whether the contracts between plaintiffs and the various defendants have been entirely terminated is a matter for ultimate decision by the court. Under the showing made, the orders issued by the trial court requiring the surrender of these articles of property to the plaintiffs, pending the determination of the litigation, was well within the court's sound discretion. Giving full recognition to the right of employees to strike, we know of no rule which permits them, when so striking, to retain possession of the property of their employers.

The orders appealed from are affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied February 15, 1960, and appellants' petition for a hearing by the Supreme Court was denied March 16, 1960.