In re James E. MULLEN, Debtor.

**FIRST PROFESSIONAL BANK, N.A., Plaintiff,**

v.

**Lance John WROBEL, M.D., an individual; James E. Mullen, M.D., an individual; South County Orthopedic Specialists, a California medical corporation, formerly known as Mullen, Wrobel, Gerten, and Moskow, Defendants.**

**Bankruptcy No. SA 95–10183 JW.
Adv. No. SA 96–1397 JW.**

United States Bankruptcy Court,
C.D. California.

June 13, 1996.

---

Michael S. Kogan, David A. Greene of Arter & Hadden, Los Angeles, CA, for Debtor/Defendant James E. Mullen, M.D.

LeRoy Anderson, Lesley Anne Hawes of Frandzel & Share, Los Angeles, CA, for Plaintiff First Professional Bank, N.A.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

Before the court are two motions in each of two related cases—motions to dismiss an adversary complaint, and motions to remand the adversary to state court. This memorandum of decision applies to both motions in both cases.

Pursuant to Federal Rule of Bankruptcy Procedure 7012, Debtors Lance and Susan Wrobel and Debtor James Mullen (collectively, "Debtors") move to dismiss the complaint filed by First Professional Bank (the "Bank") on the grounds that the Bank's claims concern alleged prepetition conduct and were therefore discharged in the Debtors' Chapter 7 cases, and even apart from the Debtors' discharge, the Bank lacks standing to bring them. The Bank opposes the Debtors' motion on the grounds, inter alia, that the Bank is only seeking to recover the assets encumbered by its lien, which it has standing to do, and that Debtors' tortious conduct occurred postpetition.

As for the motion to remand, the Bank seeks an order remanding the case to state court on the ground that this case does not arise under Title 11, and does not affect the administration of the estates. Debtors oppose the motion to remand primarily on the ground that this case should be dismissed under Rule 7012.

## I. STATEMENT OF FACTS

Debtors Lance Wrobel and James Mullen are orthopedic surgeons and were principals of Alta Pacific Multispeciality Medical Group, Inc. ("Alta Pacific"). From 1992 through 1994, the Bank extended various loans to Alta Pacific which were guaranteed by the Debtors for up to $1,000.000. As collateral on the debt, Alta Pacific executed a security

agreement granting the Bank a security interest in Alta Pacific's personal property, including its accounts receivable and general intangibles. As of March 1, 1996, $704,035 was still due and owing on these prepetition obligations.

On January 6, 1995, the Debtors filed voluntary petitions under Chapter 7, and caused Alta Pacific to do the same. Since the Bank had a lien on all the assets of Alta Pacific, the Bank obtained an order granting relief from the automatic stay to allow it to proceed in liquidating and collecting its collateral in Alta Pacific. On May 5, 1995, the Debtors obtained a discharge of their debts pursuant to Section 727(b) of the Bankruptcy Code.

At some point, the Debtors, along with another former principal of Alta Pacific, organized South County Orthopedic Specialists ("South County"), and allegedly began doing business using Alta Pacific's patient list, employees, items of equipment, furniture and contracts, allegedly maintaining relationships with insurance and health care organizations previously affiliated with Alta Pacific.

The Bank filed suit against Mullen, Wrobel, and South County in state court to recover the assets of Alta Pacific and for other damages under state law. Specifically, the Bank alleged that the Debtors transferred to South County the accounts receivable and the Goodwill of Alta Pacific and other "intangible assets," all of which were subject to the Bank's lien. The Bank listed seven causes of action: Breach of Fiduciary Duty, Fraudulent Conveyance, Interference with Business Relationships and Expectancies, Unjust Enrichment, Imposition of Constructive Trust, Conversion and Successor Liability. The Bank seeks monetary damages in the amount of the fair market value of the goodwill, the accounts receivable, and contract rights of Alta Pacific; a constructive trust to be placed on the Goodwill of Alta Pacific; reinstatement of the $704,036.73 of the principal debt owed to the Bank; and punitive damages.

The Debtors separately had this case removed to this court to determine whether the suit should be allowed in light of the Debtors' discharge.

## II. DISCUSSION

In general, a creditor with a security interest in property of a bankruptcy estate can obtain relief from the automatic stay, allowing a creditor with a secured interest to foreclose on the specific property held as collateral, or to attempt to recover an equivalent value if the collateral has been converted or destroyed. Once relief from stay is granted by the court, for all practical purposes, the trustee and the estate have no further interest in the property.

### A. The Bank Alleged Sufficient Facts To Withstand A Dismissal Under FRBP 7012

In its complaint, the Bank alleges seven different causes of action, which can be divided into two categories according to the relief sought by the Bank. First, the Bank is seeking to recover the assets of Alta Pacific plus punitive damages and a reinstatement of the sum still owed on its loan. The causes of action which relate to these damages are breach of fiduciary duty, fraudulent conveyance, interference with business relationships, and successor liability (collectively, the "First Causes of Action"). Second, the Bank is seeking to recover precisely those assets of Alta Pacific encumbered by its lien, under the theories of unjust enrichment, constructive trust and conversion (collectively, the "Second Causes of Action"). This distinction based on remedy is necessary because any cause of action seeking to recover anything other than assets encumbered by the Bank's lien may have been discharged in the Debtors' Chapter 7 bankruptcies if the conduct occurred prepetition. However, the discharge would not affect the causes of action seeking to recover only those assets of Alta Pacific encumbered by the lien because the Bank received relief from stay to pursue these claims prior to the discharge.

As for First Causes of Action, the Debtors contend that the complaint alleges that their conduct forms part of a conspiracy hatched prepetition, so that the claim arose when the conspiracy began. If, as the Debtors contend, the claim arose prepetition, then it was discharged, and the Bank's complaint must be dismissed. In contrast, the Bank

contends that the Debtors' wrongful conduct occurred postpetition, so that the Bank's claim is not precluded by the Debtors' discharge. In considering a motion dismiss under FRBP 7012, the court assumes the facts stated in the complaint are true, and the only inquiry is whether the alleged facts would entitle the plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the motion to dismiss must be denied. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978). A dismissal is proper only where there is either a "lack of cognizable legal theory" or "absence of sufficient facts alleged under a valid legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).

■■■ So in this case, since the allegations in the complaint are assumed to be true for the purposes of a motion to dismiss, it is sufficient that the Bank alleged the transfer occurred postpetition, because Debtor's discharge does not apply to postpetition claims. The issue of when Goodwill is transferred from one business to a new business is a question of fact to be determined at trial. See *Foster v. Foster*, 42 Cal.App.3d 577, 582–83, 117 Cal.Rptr. 49 (1974).

■■■ As for the Second Causes of Action aimed at recovering those assets encumbered by the Bank's lien, the Debtors contend that the only appropriate cause of action is a foreclosure proceeding. Any cause of action that is not a foreclosure proceeding amounts to a common law tort claim that should be dismissed because the claim arose prepetition.

This argument is not persuasive for two reasons. As stated above, it is not altogether clear when the Debtors' alleged conduct occurred—pre- or postpetition—and therefore a cause of action in tort may still be available to the Bank. Further, since some of the assets to be seized are intangible assets, it is not altogether clear that a foreclosure is appropriate. While the traditional cause of action to liquidate assets is a foreclosure proceeding, it is uncertain how the Bank could foreclose on the goodwill of Alta Pacific because goodwill has no independent value without the sale of the business. *In re Rich-*

*mond Produce*, 151 B.R. 1012, 1019 (Bankr. N.D.Cal.1993). Although the Bank sued the Debtors under causes of action in tort, it limited its remedy to the assets of Alta Pacific. Thus, the Bank's second causes of action, even though they are stated as tort claims, should not be dismissed to the extent that they seek to recover only the assets of Alta Pacific encumbered by the Bank's lien.

■■■ Even if there is a valid cause of action, the Debtors contend that only the Chapter 7 Trustee in the Alta Pacific case has standing to pursue such a cause of action, given that it is the trustee who has the exclusive right to sue to recover property of the estate, regardless of whether the claim arose prepetition or postpetition.

The Debtors rely on a decision by this court to contend that the trustee has the exclusive right to sue the Debtors to recover assets fraudulently transferred to another party. *In re Davey Roofing Inc.*, 167 B.R. 604 (Bankr.C.D.Cal.1994). In *Davey Roofing*, this court held that alter ego claims were property of the debtor's bankruptcy estate, and could thus be asserted only by the trustee or the debtor-in-possession; no individual creditor had standing to bring such a claim.

However, this case is distinguishable from *Davey Roofing*, because in this case, the Bank is the only party with an interest in those assets of Alta Pacific that it seeks to recover. In *Davey Roofing*, the issue was whether the claim belonged to the estate or the individual creditor, whereas here, the Trustee no longer has an interest in the those Alta Pacific assets which the Bank seeks to recover. Thus, the Bank has standing to bring the Second Causes of Actions.

■■■ Finally, the Debtors contend that the goodwill of Alta Pacific cannot be sold to satisfy a creditor's claim and has no independent value to a creditor. *In re Richmond Produce, supra*. In *Richmond Produce*, the court determined that goodwill could not be used in determining the solvency of the debtor at the time of a leveraged buyout when liquidating a bankruptcy estate. *Id.*

This argument is also unpersuasive for two reasons. The Bank is seeking to recover the accounts receivable of Alta Pacific, which is not an intangible asset. To the extent that the Bank is seeking to recover the accounts receivable, the complaint is sufficient. Further, *Richmond Produce* is distinguishable. The goodwill is not being used to determine the solvency of Alta Pacific or the Debtors; instead, the Bank is seeking to retrieve the Goodwill of Alta Pacific, which apparently the Bank believes has some value because it is being used by South County.

So the issue is whether the Bank can recover the value of an intangible asset of a dissolved business encumbered by a lien when the former principals of the dissolved business are using the intangible asset in a new business. Under California law, the Bank may have some interest in the goodwill of Alta Pacific. Goodwill is clearly property of the business and is protected by the courts in equity. *Hunt v. Phinney*, 177 Cal.App.2d 212, 216, 2 Cal.Rptr. 57 (1960). When a party uses a business's goodwill to its own advantage, the party has breached a fiduciary duty owed to the business, and the party in interest and the business may recover damages for its impairment or destruction as with any other property interest. *Baker v. Pratt*, 176 Cal.App.3d 370, 380–81, 222 Cal. Rptr. 253 (1986). Direct solicitation by a party of business in which the debtor no longer has any interest is a violation of an implied covenant that he will do nothing to deprive a buyer of the fruits of his bargain. *Bergum v. Weber*, 136 Cal.App.2d 389, 393–94, 288 P.2d 623 (1955).

The Bank has a property interest in the goodwill of Alta Pacific, and the Debtors cannot interfere with that interest. The goodwill of Alta Pacific was not sold by the Debtors, because it could not be sold without being attached to the sale of the business. This creates a dilemma for the Bank because the goodwill of Alta Pacific has no independent value to the Bank without the sale of Alta Pacific, and yet the Debtors are profiting from the goodwill of Alta Pacific through South County. Ultimately, however, this is not an issue appropriately decided in a motion to dismiss.

Accordingly, the Complaint alleges sufficient facts to establish a claim, and the motion to dismiss is therefore denied. The Bank has a valid claim against the Debtors to sue for the assets of Alta Pacific because the Bank has a valid lien on those assets. To the extent that the Bank is seeking further damages beyond the assets of Alta Pacific, the Bank must rely on tort law, and the court that tries the case will need to determine when the alleged conduct occurred, prepetition or postpetition.

**B. This Case Should Be Remanded To State Court**

In its motion to remand, the Bank contends that this court lacks jurisdiction to hear this matter because it does not arise under Title 11, and does not relate to a case under Title 11. Specifically, the Bank contends that its claims are noncore matters because they are based upon postpetition actions and are based solely upon state law. Further, the Bank contends that even if the Bank's actions were related to the bankruptcy case, mandatory abstention is required under 28 U.S.C. Section 1334(c)(2) because the Bank's claims arise solely under state law and the action can be timely adjudicated in a state forum of appropriate jurisdiction. Finally, the Bank contends this case should be remanded under the court's discretion because the state has an interest in deciding issues pertaining solely to its laws. In contrast, the Debtors contend that this case is a core matter affecting the administration of the estate, and affecting the liquidation of assets of the estate. *In re DeLorean Motor Co.*, 155 B.R. 521, 525 (9th Cir. BAP 1993). Further, the Debtors contend that discretionary abstention should not be applied, because regardless of the merits of the Bank's claim, it was discharged under the bankruptcy code, and this court is in at least as good a position to make that determination.

28 U.S.C. Section 1334(c) provides:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State laws, from abstaining from hearing a particular proceeding aris-

ing under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).

As for mandatory abstention, although all of the other requirements of Section 1334(c)(2) are met, there is nothing in the record from which this court could make a finding that the action, if remanded to the state court, could be timely adjudicated. Nevertheless, exercising discretion, this court abstains under Section 1334(c)(1), and remands the action to state court where it was commenced.

### III. CONCLUSION

For the foregoing reasons, the court denies the Debtors' motions to dismiss the Bank's complaint, and grants the Bank's motions to remand the action to state court. This memorandum contains the court's findings of fact and conclusions of law. Counsel for the Defendants shall lodge and serve a proposed order consistent with this memorandum of decision.