

# FILED

JUN 27 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-15-1406-BSKu |
| WILLIAM C. SHAW, | Bk. No.   1:14-bk-11318 |
| Debtor. | |
| LISA ROGERSON, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| WILLIAM C. SHAW, | |
| Appellee. | |

Argued and Submitted on January 19, 2017,
at San Francisco, California

Filed - June 27, 2017

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

Appearances:   Stephen Davis Finestone argued for appellant Lisa
Rogerson; Ruth Elin Auerbach argued for appellee
William C. Shaw.

Before:   BRAND, SPRAKER[2] and KURTZ, Bankruptcy Judges.

Memorandum by Judge Brand
Concurrence by Judge Spraker

---

[1]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2]   Hon. Gary A. Spraker, Chief Bankruptcy Judge for the
District of Alaska, sitting by designation.

Creditor Lisa Rogerson appeals an order finding her in contempt for violating the discharge injunction and awarding attorney's fees and costs to chapter 7[3] debtor, William C. Shaw. Because the bankruptcy court erred by applying an incorrect legal standard to determine whether Rogerson had actual knowledge that the discharge injunction applied to her amended complaint filed in state court as required under ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996 (9th Cir. 2006), we REVERSE the court's finding of contempt, VACATE the order awarding sanctions and REMAND for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.   Prepetition events and Shaw's bankruptcy filing**

Shaw has been in the automotive wheel restoration business since 2003, primarily as a sole proprietor.  Rogerson and Shaw began dating in December 2012 and later rented a house together.

On May 7, 2013, Rogerson and Shaw entered into an Investment Agreement/Promissory Note ("Agreement"), wherein Rogerson agreed to provide Shaw dba Shaw's Wheel Restoration and "any liability entity as may hereinafter be formed" with a line of credit not to exceed $150,000 for the purpose of financing an automotive wheel refinishing business.  Shaw also promised to pay Rogerson a "guaranteed investment return" up to $150,000 to coincide with the amount of funds Rogerson ultimately loaned Shaw.  For example, if Rogerson loaned Shaw a total of $75,000, he was obligated to pay her an additional $75,000 for the investment return.  The entire

---

[3]   Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

loan was to be paid by April 2015. Monthly payments were to begin in January 2014. If any payment was not made within 30 days of being due, Rogerson could demand payment in full of the entire balance, including the investment return.

A few weeks after Rogerson and Shaw signed the Agreement, Shaw formed Shaw's Wheel Restoration, LLC (the "LLC"), to continue his business in that form with him as the sole member. Shaw contends the LLC never assumed the obligations of the Agreement as the parties had contemplated.

When Shaw failed to make any of the monthly payments under the Agreement, Rogerson sued Shaw and his dba Shaw's Wheel Restoration in state court for four causes of action seeking to recover $359,438, which included (1) monies owed under the Agreement ($150,000 for money lent, $150,000 for the investment return and $16,063 for interest owed), (2) $9,000 for a security deposit, (3) $10,175 for other monies loaned to Shaw, and (4) $24,200 for consulting fees owed to Rogerson.

Shaw filed a chapter 7 bankruptcy case on September 11, 2014, which stayed the state court action. Shaw claimed in his Schedule B that the LLC had $0 value, other than the assets listed in Item 35 which consisted of a variety of tools and accounts receivable valued at $34,715. Shaw claimed these same assets (and some others potentially belonging to the LLC) exempt. Rogerson was listed as both a secured and unsecured creditor. Shaw noted in his Schedule I that his employer since May 2013 was the LLC.

-3-

**B. Postpetition events**

    **1. Claim objection, dissolution of the LLC and Shaw's discharge**

Rogerson did not object to the discharge of her claims, but she did object to certain claimed exemptions made by Shaw on the grounds that the exempt property was owned by the LLC. The bankruptcy court ruled that the exemptions were lawful but that they did not extend to property not owned by Shaw. The court reserved jurisdiction to adjudicate ownership of disputed property, but Rogerson elected to proceed in state court.

After Shaw's discharge, the state court determined some items of property belonged to the LLC and ordered Shaw to turn them over to Rogerson because she held a security interest in the LLC's personal property. Shaw complied with the orders. As part of these orders, a payment of $4,073 was made on the Agreement to Rogerson in April 2015. Although the cashier's check was made out by Shaw, the parties dispute whether that payment actually came from Shaw or the LLC.

On December 12, 2014, Shaw resumed his wheel restoration business as a sole proprietor under the name Bill Shaw, dba Bill Shaw's Wheel Restoration. Shaw cancelled the LLC on December 15, 2014.

On December 16, 2014, Shaw received his discharge. Rogerson admitted receiving notice of Shaw's discharge.

    **2. Rogerson's amended state court complaint**

In August 2015, Rogerson sought leave to file an amended complaint ("FAC") in the state court action. The FAC alleged twelve causes of action; the first eleven named only the LLC as

the defendant (the "Entity Causes of Action") and the twelfth, a claim for fraudulent transfer (the "Fraudulent Transfer Cause of Action"), named both the LLC and Shaw. The basis for Rogerson's Entity Causes of Action was the LLC's failure to pay her under the Agreement and other additional LLC loans. These Entity Causes of Action were essentially a variation of the same four causes of action Rogerson had initially alleged against Shaw prepetition. Rogerson conceded that any personal loans she made to Shaw prepetition had been discharged in his bankruptcy case.

For the Fraudulent Transfer Cause of Action, Rogerson alleged that Shaw had fraudulently cancelled the LLC in December 2014. Rogerson alleged that Shaw and the LLC hindered, delayed and defrauded her by transferring postpetition the LLC's assets to Shaw or transmuting them into other unknown property to prevent Rogerson from collecting any of the LLC's debt owed to her. For this cause of action, Rogerson alleged she had been damaged in an amount no less than $500,000.

The focus of the dispute between the parties lies in paragraphs 39-41 of the FAC, which state:

(39) Because Mr. Shaw personally acquired the assets of Shaw's Wheel Restoration, LLC for no or inadequate consideration, without assuming its liabilities, because Mr. Shaw was the sole member of Shaw's Wheel Restoration, LLC, and because Mr. Shaw has continued to operate as a sole proprietor the same business that Shaw's Wheel restoration, LLC operated, Mr. Shaw is a mere continuation of Shaw's Wheel Restoration, LLC.

(40) Thus, as Mr. Shaw, currently doing business as Bill Shaw's Wheel Restoration, is essentially the same business as Shaw's Wheel Restoration, LLC, Mr. Shaw may be held liable for Shaw's Wheel Restoration, LLC's obligations to Ms. Rogerson under the LLC Investment Agreement, the LLC Oral Payments, and the LLC Consulting Agreement.

(41) Accordingly, Shaw's Wheel Restoration, LLC/Mr. Shaw

-5-

owes Ms. Rogerson the total of $344,792.84 [$295,927.00 (LLC Investment Agreement of $300,000 - $4,073.00 payment) + $8,031.00 (LLC Oral Payments) + $18,174.84 (LLC Draw Advances) + $22,660.00 (LLC Consulting Agreement $27,860 - $5,200 payment)].

In a letter dated September 10, 2015, Shaw's attorney informed Rogerson's counsel that he believed the proposed FAC violated the discharge injunction by seeking to impose "continuation liability" on Shaw personally for the exact same claims that were discharged in his bankruptcy case. Shaw's attorney warned that, if Rogerson insisted on pursuing Shaw personally for any prepetition obligations, he would ask the bankruptcy court to hold Rogerson in contempt of the discharge order and to award Shaw damages.

In response, Rogerson's attorney noted that the Entity Causes of Action were brought against defendants other than Shaw. For the Fraudulent Transfer Cause of Action, counsel contended that to the extent Shaw had any liability it was due to his postpetition actions respecting the LLC. Counsel asserted that Shaw had committed fraud by wrongfully dissolving the LLC and transferring to himself the LLC's assets. Counsel asserted that because these actions occurred postpetition, they created a new, not discharged liability for Shaw.

The state court granted Rogerson leave to file the FAC on October 2, 2015.

**3.    Shaw's motion to enforce discharge injunction**

After the bankruptcy court granted Shaw's motion to reopen his bankruptcy case, Shaw filed his motion to enforce the discharge injunction and award sanctions. Shaw argued that the FAC violated the discharge injunction by including allegations and

claims seeking to hold him personally liable as the conduit or successor-in-interest to a defunct LLC that Rogerson was now seeking to hold liable for the exact same personal obligations upon which she sued him in the state court action and which were discharged. Shaw argued that by artful pleading, Rogerson was hoping to impose personal liability on him by falsely claiming that the alleged personal obligations of Shaw were really obligations of the defunct LLC. Shaw argued that Rogerson had gone so far as to falsely allege that she had received a payment from the LLC on the Agreement (the $4,073 cashier's check), even though she knew the payment came from Shaw personally.

Shaw asserted that he had incurred $14,900 in legal fees and $269.60 in costs in effort to enforce the discharge against Rogerson. Shaw's counsel confirmed these amounts in his attached declaration and time sheets, which disclosed that he spent approximately 30 hours on the matter at an hourly rate of $500.00.

Rogerson opposed Shaw's motion on essentially three grounds. First, Shaw had failed to acknowledge any distinction between his direct liability and his continuation liability for the LLC's debts. While Shaw's discharge covered his direct liability, it did not cover any continuation liability that arose postpetition. As for the Entity Causes of Action, which Rogerson said could have been pleaded against Shaw but were not, Rogerson argued that Shaw likely transferred the LLC's assets to himself postpetition; he admitted that he "resumed" his sole proprietorship in December 2014. Shaw was the sole member of the LLC, and it appeared that he had provided no adequate consideration for the LLC's assets. Therefore, argued Rogerson, it was possible that Shaw was

-7-

responsible for the LLC's debts as its successor. Second, Rogerson argued that the Fraudulent Transfer Cause of Action did not violate the discharge injunction because it sought damages for postpetition transfers or in rem relief for any transfers.

Lastly, Rogerson argued that the bankruptcy court could not find her in contempt for violating the discharge injunction because she did not "knowingly" violate it. Shaw had argued that he needed to prove only that Rogerson knew of the discharge order. However, this was not the standard. Citing ZiLOG and Chionis v. Starkus (In re Chionis), 2013 WL 6840485 (9th Cir. BAP Dec. 27, 2013), Rogerson contended that Shaw had to also prove she knew the discharge order "applied" to her claim. Rogerson argued that one could not reasonably conclude she knew her claim based on continuation liability was prepetition and thus discharged, or that she knew the fraudulent transfers occurred prepetition and that she was enjoined from seeking damages from Shaw as transferee. Rogerson contended that Shaw's own schedules were incoherent, creating a situation where it was impossible to tell what was owned by Shaw and what was owned by the LLC. Rogerson argued that until those facts were adjudicated, it could not be determined when the transfers occurred and when continuation liability arose.

Along with his reply, Shaw filed a declaration stating that he had incurred a total of $33,850 in legal fees and $281.01 in costs to enforce the discharge injunction against Rogerson.

**4. Hearing on Shaw's motion and ruling**

The bankruptcy court held a hearing on Shaw's motion. After some discussion about the nature of the claims in the FAC, counsel

-8-

for Rogerson argued his last point of whether Shaw had proven Rogerson knowingly violated the discharge injunction. The court opined that under any test Rogerson had violated the discharge injunction. However, it believed that the test Rogerson set forth in her brief was "not the most current statement of the law." Hr'g Tr. (Oct. 23, 2015) 15:13-18.

The bankruptcy court issued a Memorandum Decision and Order, finding Rogerson in contempt for willfully violating the discharge injunction. The court found that the FAC was a "gross violation" of Shaw's discharge because it named him personally and sought damages against him for the same debt that was discharged in his bankruptcy — the $300,000 debt based on the pre-bankruptcy Agreement. The court rejected Shaw's successor liability theory, that the discharged debt could be revived based on Shaw's postpetition acts. Having found a sanctionable violation of the discharge injunction, the court awarded Shaw his "very reasonable" attorney's fees of $33,850 and $281.00 in costs. Rogerson timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in determining that Rogerson willfully violated the discharge injunction?

## IV. STANDARDS OF REVIEW

Determining whether the bankruptcy court applied the correct legal standard is a question of law we review de novo. Emmert v. Taggart (In re Taggart), 548 B.R. 275, 286 (9th Cir. BAP 2016).

The bankruptcy court's finding of a willful violation of § 524 is reviewed for clear error. Id. A finding is clearly erroneous when it is illogical, implausible or without support in the record. Id. (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). An erroneous view of the law may induce the bankruptcy court to make a clearly erroneous finding of fact. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006) (citing Power v. Union Pac. R.R. Co., 655 F.2d 1380, 1382-83 (9th Cir. 1981)).

The bankruptcy court's decision as to whether sanctions should be imposed for a violation of the discharge injunction is reviewed for an abuse of discretion. Nash v. Clark Cnty. Dist. Atty's. Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012). A bankruptcy court abuses its discretion if its decision is based on an incorrect legal rule, or if its findings of fact were illogical, implausible or without support in the record. Id. (citing Hinkson, 585 F.3d at 1262).

## V. DISCUSSION

**A. Governing law for violations of the discharge injunction**

A discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor." § 524(a)(2). A party who knowingly violates the discharge injunction under § 524(a)(2) can be held in contempt under § 105(a). In re ZiLOG, Inc., 450 F.3d at 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); In re Taggart, 548 B.R. at 286.

To be subject to sanctions for violating the discharge

-10-

injunction a party's violation must be "willful." In re Nash, 464 B.R. at 880. The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the alleged contemnor "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." In re ZiLOG, Inc., 450 F.3d at 1007. Knowledge of the injunction is a question of fact that can normally be resolved only after an evidentiary hearing. Id. However, where the facts are not in dispute, no hearing need be held. Id. at 1007 n.11 (citing Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191-92 (9th Cir. 2003)).

For the second prong — the intent requirement for a finding of willfulness — courts employ the same analysis for violations of the discharge injunction as they do for violations of the automatic stay. In re Taggart, 548 B.R. at 288. The focus is on whether the offending party's conduct violated the injunction and whether that conduct was intentional; it does not require a specific intent to violate the injunction. In re Dyer, 322 F.3d at 1191 (citing Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996); Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995)). If a bankruptcy court finds that a party has willfully violated the discharge injunction, it may award the debtor actual damages, punitive damages and attorney's fees and costs. In re Nash, 464 B.R. at 880.

We recently observed in Taggart that the Ninth Circuit has crafted a strict standard for the "actual knowledge" requirement in the context of contempt before a finding of willfulness can be made. 548 B.R. at 288. This standard, with respect to the first

-11-

prong, requires the moving party to show that the alleged contemnor was aware of the discharge injunction **and** aware that it applied to his or her claim.  Id. (emphasis in original).  See In re ZiLOG, Inc., 450 F.3d at 1009 n.14[4]; In re Chionis, 2013 WL 6840485, at \*5.  Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's subjective belief, even an unreasonable one.  In re ZiLOG, Inc., 450 F.3d at 1009 n.14; In re Taggart, 548 B.R. at 288.  On the other hand, subjective self-serving testimony may not be enough to rebut actual knowledge when the undisputed facts show otherwise.  In re Taggart, 548 B.R. at 288 (citing In re Chionis, 2013 WL 6840485, at \*6).

Accordingly, each prong of the Ninth Circuit's two-part test for a finding of contempt in the context of a discharge violation requires a different analysis, and distinct, clear, and convincing evidence supporting that analysis, before a finding of willfulness can be made.  Id.

**B.    The bankruptcy court applied an incorrect legal standard to find that Rogerson had willfully violated the discharge injunction.**

Rogerson contends the bankruptcy court erred by finding her in contempt for willfully violating the discharge injunction without making any finding as to whether she knew the discharge injunction "applied" to her causes of action in the FAC.  We

---

[4]  Specifically, the Ninth Circuit in ZiLOG held:  "To be held in contempt, the [alleged contemnors] must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to their claims.  To the extent that the deficient notices led the [alleged contemnors] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness."

-12-

agree.

Although the bankruptcy court expressly cited ZiLOG and its two-part test, it misapplied the first prong of the test, conflating the objective inquiry under the second prong of the willfulness test regarding intent with the fact-intensive inquiry under the actual knowledge requirement in the first prong. The court found that Rogerson was aware of the discharge order, which she never disputed. The court then went on to conclude that Rogerson's good faith belief or subjective intent that her causes of action in the FAC did not violate the discharge injunction was irrelevant. As we noted in Taggart, this strict liability analysis is consistent with the standards for a willful violation of the automatic stay because § 362(k) does not have a specific intent requirement. It is also consistent with an analysis under the second prong of the willfulness test. However, it cannot apply to the first prong of the discharge violation test, which requires actual knowledge of applicability. 548 B.R. at 290-91.

In addition, as evident from the hearing transcript, the bankruptcy court erred by shifting the burden to Rogerson to disprove the applicability of the discharge order to her causes of action in the FAC. The court ultimately determined that Rogerson's legal theory of successor liability had no merit, a determination that would appear to be within the province of the state court, and that her acts appeared motivated by anger arising from the termination of her relationship with Shaw rather than an honest attempt to collect a debt. The court also never explained how the Fraudulent Transfer Cause of Action seeking in rem relief based on what were alleged postpetition acts by Shaw violated the

-13-

discharge injunction.

Finally, since Rogerson disputed that the discharge injunction applied to any of her causes of action in the FAC, the bankruptcy court was required to hold an evidentiary hearing, which it did not do. In re ZiLOG, Inc., 450 F.3d at 1007; Yen v. Pedroche (In re Pedroche), 2014 WL 5840297, at *5 (9th Cir. BAP Nov. 10, 2014). We are hard-pressed to conclude on this record that Shaw had proven by clear and convincing evidence Rogerson knew the legal theories of recovery she asserted in the FAC violated the discharge injunction.

Because the bankruptcy court applied an incorrect legal standard, its finding that Rogerson willfully violated the discharge injunction is clearly erroneous. Accordingly, it abused its discretion by finding Rogerson in contempt. It follows that the award for attorney's fees and costs cannot stand.

## VI. CONCLUSION

Because the bankruptcy court erred by applying an incorrect legal standard and by not conducting the required evidentiary hearing, we REVERSE its finding of contempt, VACATE the order awarding sanctions and REMAND for the court to conduct an evidentiary hearing and make findings consistent with In re ZiLOG, Inc.

Concurrence begins on next page.

-14-

SPRAKER, Bankruptcy Judge concurring.

I agree that if the FAC constitutes a violation of Shaw's discharge that further proceedings are required to determine whether Rogerson knew the discharge applied to her filing consistent with ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996 (9th Cir. 2006). I write this concurrence, however, because I believe that filing the FAC did not violate Shaw's discharge injunction.

The bankruptcy court determined that Rogerson's action violated Shaw's discharge because:

> It names him personally, and seeks damages against him for the same $300,000.00 ($150,000.00 for money lent and $150,000.00 for "investment return") based on the same pre-bankruptcy agreement. The amended complaint is based on Shaw's post-bankruptcy termination of the LLC and reversion to doing business as a sole proprietorship. Rogerson's theory is that the LLC was a party to the agreement based on the "entity as may hereinafter be formed" language, so that the debt on the agreement is its debt as well; that Shaw is the successor in interest to the LLC and is therefore liable for all its debts; and therefore he has liability to Rogerson on the agreement as a successor to the LLC even though his direct obligation has been discharged.

This led the bankruptcy court to conclude that Rogerson impermissibly sought "to recover the same debt against Shaw that was discharged in his bankruptcy, and therefore is a blatant violation of a discharge injunction."

Rogerson does seek to recover the same damages that were discharged against Shaw within his personal bankruptcy. However, as pleaded, she asserts all but one of her claims against the California limited liability company in which Shaw was the sole member. The debts derive from the same payments made by Rogerson to Shaw, but they are alleged to have been made for, or to, the

-1-

limited liability company, thereby contractually obligating it to Rogerson. She sues for the entity's separate breaches of contract. Shaw protests that the FAC is nothing more than artful drafting. In support of his motion for contempt, he submitted a declaration to the bankruptcy court challenging Rogerson's factual allegations, and expressly denied that his entity ever signed, or assumed, his personal debts owed to her.

Despite Shaw's criticism of the FAC, the Entity Causes of Action assert claims against the LLC alone.[1] Whatever the merits of such claims, they seek recovery against a third party nondebtor based upon its separate liability. Though Shaw was the only member of his limited liability company, that entity remains distinct from him individually. Cal. Corp. Code § 17701.04(a); Kwok v. Transnation Title Ins. Co., 170 Cal. App. 4th 1562, 1570-71 (2009). Rogerson's claims against the LLC, therefore, constitute nothing more than an effort to collect against a jointly liable nondebtor third party. In this regard, the claims are no different from any action against a guarantor or insurer to recover a debt owed by a discharged debtor. Star Phoenix Mining Co. v. W. Bank One, 147 F.3d 1145, 1148 (9th Cir. 1998) (debtor's bankruptcy did not discharge guarantor's liability); Chapman v.

_____

[1] As noted previously, Rogerson's FAC includes general allegations that Shaw is the mere continuation of the LLC, and states that "Shaw Wheel Restoration/Mr. Shaw" owes her damages. However, the Entity Causes of Action are directed towards the LLC, not Shaw, and are comprised of: the LLC's breach of written contract, indebitatus assumpsit-LLC investment agreement, breach of oral contract, breach of implied contract, indebitatus assumpsit-LLC oral payments, breach of contract-LLC draw advances, breach of implied contract-LLC draw advances, indebitatus assumpsit-LLC draw advances, breach of contract-LLC consulting agreement, breach of contract-LLC consulting agreement, indebitatus assumpsit-LLC consulting agreement.

-2-

Bituminous Ins. Co. (In re Coho Res., Inc.), 345 F.3d 338, 343 n.14 (5th Cir. 2003) (quoting 4 Collier on Bankruptcy ¶ 524.05, at 524-46 (Lawrence P. King ed., 15th ed. rev. 2003)). Shaw's personal bankruptcy did not, and could not, discharge a third party's liability to the extent that it exists. § 524(e); Patronite v. Beeney (In re Beeney), 142 B.R. 360, 362 (9th Cir. BAP 1992) ("Subsection (e) makes clear that this injunction applies only to the debtor's personal liability and does not inhibit collection efforts against other entities."); In re Linda Vista Cinemas, L.L.C., 442 B.R. 724, 742 (Bankr. D. Ariz. 2010) ("The only comment in the legislative history of § 524(e) is merely that it 'provides the discharge of the debtor does not affect co-debtors or guarantors.'"). Therefore, Rogerson's claims against the LLC did not violate the discharge injunction.

Rogerson's remaining claim is directed against the debtor personally.[2] She contends that Shaw is liable for fraudulently transferring the LLC's remaining assets to himself several months after filing his personal bankruptcy. Rogerson alleges that both Shaw and his entity acted with the actual intent to hinder, delay and defraud Rogerson's recovery of the debt owed to her by the entity. Rogerson's ability to recover against Shaw individually for fraudulent transfers is wholly dependent upon whether the LLC was actually indebted to her. Cal Civ. Code § 3439.04(a). But,

---

[2] As noted in the memorandum, the FAC includes general allegations referencing successor liability. But, the only cause of action against Shaw individually is for fraudulent transfer. Whether Rogerson seeks to impose liability under a claim for successor liability or fraudulent transfer, both are based upon the LLC's underlying liability rather than Shaw's prepetition personal liability. Moreover, Shaw's personal liability under either claim would be based upon post-petition activity.

-3-

if such allegations are established, Shaw would become individually liable based upon his postpetition receipt of a fraudulent transfer, rather than resurrection of his direct liability for his breach of contract. Shaw's discharge does not protect him from postpetition liability. § 727(b); see First Prof'l Bank, N.A. v. Wrobel (In re Mullen), 200 B.R. 352, 355 (Bankr. C.D. Cal. 1996). Therefore, the claim for fraudulent transfer did not violate the discharge injunction either.

The bankruptcy court viewed these claims as a mere artifice to reimpose individual liability upon Shaw for discharged debts. However, debtors should not be permitted to collaterally attack the merits of claims against third parties under the guise of discharge litigation. The question before the bankruptcy court was limited to whether Rogerson's FAC against the LLC violated Shaw's individual discharge; not whether those claims were meritorious. Rogerson sued a third party, and does not seek to recover against Shaw personally except for his post-petition receipt of allegedly fraudulently transferred assets. While the bankruptcy court's skepticism of Rogerson's claims against the limited liability company may be well founded, that determination must be made by the state court. Should Rogerson's claims prove to be frivolous, remedies exist to address that situation. For purposes of the motion for contempt, it suffices that Rogerson is not suing Shaw to recover upon his own prepetition breach of contract damages. I would reverse the bankruptcy court's finding of contempt and its award of sanctions on this basis, thereby mooting the need to remand the case for further proceedings.